RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0128p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

BOWLING GREEN AND WARREN COUNTY
AIRPORT BOARD, and GEOFF FIELDS,
                    *Plaintiffs-Appellants,*

                *v.*

MARTIN LAND DEVELOPMENT CO., INC., and
CO-MAR AVIATION, INC.,
                    *Defendants-Appellees.*

> No. 08-5353

Appeal from the United States District Court
for the Western District of Kentucky at Bowling Green.
No. 07-00018—Joseph H. McKinley, Jr., District Judge.

Argued: March 13, 2009

Decided and Filed: April 1, 2009

Before: BATCHELDER and CLAY, Circuit Judges; COX, District Judge.[*]

_____

## COUNSEL

**ARGUED:** Christopher Todd Davenport, BRODERICK & ASSOCIATES, Bowling Green, Kentucky, for Appellants. Timothy L. Mauldin, BELL, ORR, AYERS & MOORE, Bowling Green, Kentucky, for Appellees. **ON BRIEF:** Christopher Todd Davenport, David F. Broderick, BRODERICK & ASSOCIATES, Bowling Green, Kentucky, for Appellants. Timothy L. Mauldin, William T. Wade, Jr., BELL, ORR, AYERS & MOORE, Bowling Green, Kentucky, for Appellees.

---

[*]The Honorable Sean F. Cox, United States District Judge for the Eastern District of Michigan, sitting by designation.

———————————

**OPINION**

———————————

CLAY, Circuit Judge. Plaintiffs, the Bowling Green and Warren County Airport Board ("Airport Board") and Geoff Fields ("Fields"), appeal from the district court's decision granting summary judgment in favor of Defendants, Martin Land Development Company, Inc. ("Martin") and Co-Mar Aviation, Inc. ("Co-Mar"). The district court granted summary judgment in favor of Defendants on the ground that 49 U.S.C. § 40103 does not imply a private right of action. Although other circuits have addressed the issue, this is a matter of first impression for this Court. For the reasons set forth herein, we **AFFIRM** the judgment of the district court.

**I.**

In December 1998, the Airport Board entered into a Lease Agreement with Martin and a related Contract for Fixed Base Operations ("FBO") with Co-Mar Aviation. A conflict subsequently arose between Defendants and the Airport Board concerning the nature and extent of the Lease Agreement. Specifically, the parties disagreed as to whether the lease entitled Defendants to claim an exclusive leasehold interest in certain ramp and apron space for aircraft parking. Disputing Defendants' reading of the lease, the Airport Board directed Defendants to cease and desist their efforts to charge ramp fees for the disputed areas. Defendants responded by filing a declaratory judgment action in the United States District Court for the Western District of Kentucky seeking recognition of their exclusive leasehold interest in those areas of the airport.

Defendants' complaint alleged the existence of several issues of federal law, including issues under 49 U.S.C. § 40103. Arguing that the claims involved nothing more than a dispute over the terms of the lease, the Airport Board moved to dismiss the complaint for lack of jurisdiction. Defendants asserted that the claims under § 40103

conferred federal question jurisdiction in the district court   Agreeing with the Airport Board's position, the district court dismissed the action.

Martin Land and Co-Mar then turned to the Kentucky state courts seeking recognition that the Lease Agreement granted them exclusive use of the disputed areas of the airport.  On July 7, 2003, after extensive discovery and a bench trial, the state trial court entered judgment in favor of the Airport Board, concluding that the premises leased to Martin "consist solely of the FBO building, the landscaped grounds and walkways surrounding the exterior of the FBO building, and the canopy and ramp space beneath the canopy."  (J.A. 115.)  The trial court thus rejected Defendant's claim of exclusive use of the ramp and apron adjacent to the FBO building.

On appeal, the Kentucky Court of Appeals reversed, holding that the Lease Agreement plainly and unambiguously granted Defendants an exclusive leasehold interest in the disputed ramp and apron areas.  The Court of Appeals remanded the case back to the trial court for determination of the dimensions of the leasehold area, the amount of compensatory damages, and whether Defendants were entitled to attorneys' fees.

Following entry of the Court of Appeals' judgment, the Airport Board moved the Supreme Court of Kentucky for discretionary review.  That court denied review. Following the denial of review, the decision of the Court of Appeals became final and the matter moved back to the trial court for resolution of the remand issues.  The Airport Board then moved for resolution of the "issues of federal law" that the Airport Board contends were not resolved by the Court of Appeals' decision, including whether 49 U.S.C. § 40103 precluded granting exclusive use of the disputed areas to Defendants. The trial court denied the Airport Board's motion, effectively declining to address that issue.

On January 24, 2007, the Airport Board and Fields, a pilot who uses the airport, filed the instant action in federal district court seeking resolution of those outstanding federal issues, alleging, among other things, that Defendant's exclusive use claim

violates 49 U.S.C. § 40103(e). On March 13, 2007, Martin and Co-Mar filed a motion to dismiss or, in the alternative, for summary judgment. On November 29, 2007, after briefing and argument, the district court entered judgment in favor of Defendants, concluding that 49 U.S.C. § 40103 does not provide a private right of action. In reaching that conclusion, the district court was persuaded by the "overwhelming authority" from other circuits holding that § 40103 does not provide an implied private cause of action. *Bowling Green & Warren County Airport Bd. v. Martin Land Dev. Co., Inc.*, No. 1:07cv18-M, 2007 U.S. Dist. LEXIS 87885, at *6-7 (W.D. Ky. Nov. 29, 2007).

After the district court denied the Airport Board's motion for reconsideration, this timely appeal followed.

## II.

Generally, this Court reviews a district court's decision granting summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008). Because the district court's decision turned on its interpretation of a federal statute, however, this Court reviews that question of law *de novo*. *See United States v. Spinelle*, 41 F.3d 1056, 1057 (6th Cir. 1994) (citing *United States v. Brown*, 915 F.2d 219, 223 (6th Cir. 1990) ("A district court engages in statutory construction as a matter of law, and we review its conclusions *de novo*.")).

## III.

In relevant part, 49 U.S.C. § 40103 precludes "exclusive rights" at certain airport facilities, stating: "A person does not have an exclusive right to use an air navigation facility on which Government money has been expended." 49 U.S.C. § 40103(e). The language of § 40103(e) does not explicitly provide for a private cause of action, nor does any other provision of the statute. Thus, the only basis for asserting a claim under that provision would be that the statute implies a private right of action.

In *Cort v. Ash*, 422 U.S. 66 (1975), the Supreme Court set forth four factors that "are relevant" in "determining whether a private remedy is implicit in a statute not expressly providing one." *Id.* at 78. According to *Cort*, courts must consider:

> First, is the plaintiff "one of the class for whose especial benefit the statute was enacted" . . . – that is, does the statute create a federal right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? . . . Third, is it consistent with the underlying purposes of the legislative scheme to imply such a remedy for the plaintiff? . . . And finally, is the cause of action one traditionally relegated to state law, in an area basically the concern of the States, so that it would be inappropriate to infer a cause of action based solely on federal law?

*Id.* at 78 (citations omitted). As the Court subsequently explained, however, the factors enumerated in *Cort* do not demand equal consideration. Rather, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action." *Touche Ross & Co. v. Redington*, 442 U.S. 560, 575 (1979). Indeed, since the issuance of *Cort*, "the Supreme Court has refined this inquiry [to clarify that] the focal point is whether Congress, expressly or by implication, intended to create a private cause of action." *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 308 (6th Cir. 2000) (citing *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 15-16 (1979), and *Touche Ross*, 442 U.S. at 575); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002) (noting that courts "must first determine whether Congress *intended to create a federal right*" (emphasis in original)).

In other words, although *Cort* "articulated a four-part test to determine whether an implied right of action exists in a federal statute," *Parry*, 236 F.3d at 308, subsequent decisions have made clear that congressional intent is the "determinative factor." *Thompson v. Thompson*, 484 U.S. 174, 189 (1988) (Scalia, J., concurring) ("We effectively overruled the *Cort v. Ash* analysis in *Touche Ross* . . . and *Transamerica* . . ., converting one of its four factors (congressional intent) into the *determinative factor*."). The remaining three *Cort* factors "are relevant [only] insofar as they assist in determining congressional intent." *Parry*, 236 F.3d at 308; *accord Local 3-689, Oil,*

*Chem. & Atomic Int'l Union v. Martin Marietta Energy Sys. Inc.*, 77 F.3d 131, 134 (6th Cir. 1996) ("The *Cort* factors are simply tools to divine the intent of Congress in the event of statutory silence."). Accordingly, absent congressional intent to create a private remedy, "a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Alexander v. Sandoval*, 532 U.S. 275, 287-88 (2001).

## IV.

Although this appeal presents a matter of first impression in this circuit, at least two other circuits have addressed the issue. The First Circuit in *Interface Group, Inc. v. Massachusetts Port Authority*, 816 F.2d 9 (1st Cir. 1987), and the Second Circuit in *Montauk-Caribbean Airways, Inc. v. Hope*, 784 F.2d 91 (2d Cir. 1986), both concluded that 49 U.S.C. § 1349(a), the precursor to § 40103, did not provide an implied private right of action. Significantly, both decisions noted the utter lack of congressional intent to provide a private right of action. *See Interface Group*, 816 F.2d at 14-15; *Montauk-Carribean Airways*, 784 F.2d at 97. Although we are not bound by those decisions, they are highly persuasive, *see Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 553 n.6 (6th Cir. 2007) ("[W]hile analogous decisions from our sister circuits are not binding, we have repeatedly recognized their persuasive authority."), especially as to the determination of Congress' intent.

In holding that 49 U.S.C. § 40103 does not provide a private cause of action, the First Circuit concluded that the statutory framework and legislative history actually evince Congress' intent to *deny* a private right of action:

> There is nothing in the legislative history that suggests any intent to create a private right of action. At the same time, the statute as a whole provides an administrative and judicial enforcement scheme that suggests at least some Congressional wish for an element of administrative expertise at the enforcement stage, an expertise that tends to be lost when private parties can enforce the statute directly in federal court. This latter view is reinforced by the reference to the Secretary of Transportation in the first quoted sentence and by the fact that Congress created an express private right of right of action elsewhere in related provisions of the

statute, but not here. *See* 49 U.S.C. App. § 1487 (1982) (creating a private right of action for violations of § 1371(a) of the same Act). Thus, if anything, the statute manifests legislative intent to deny, not to grant, a private right of action.

*Interface Group*, 816 F.2d at 14-15. The Second Circuit reached the same conclusion, noting that "the legislative history of [the statute] contains no suggestion that Congress intended to create an implied private right of action." *Montauk-Caribbean Airways*, 784 F.2d at 97.

In accord with the decisions of our sister circuits, we also conclude that Congress did not intend § 40103 to provide a private cause of action. Indeed, none of the considerations that guide our inquiry points in favor of implying a private right of action.

Contrary to Plaintiffs' claim that the purpose of the statute cannot be effectuated without implying a private cause of action, § 46101(a)(1) permits private parties to file a complaint with the Secretary of Transportation or the Administrator of the Federal Aviation Administration in the event that a violation of the statute, including § 40103(e), has occurred. *See* 49 U.S.C. § 46101(a)(1). And pursuant to § 46106, the Secretary or Administrator may bring a civil action to enforce the statute. *See* 49 U.S.C. § 46106. In addition, under § 46107, the Attorney General also may bring an action to remedy any violation of the statute and/or prosecute any offending parties. *See* 49 U.S.C. § 46107. Significantly, however, the statute lacks any provision suggesting in any way that private parties may bring civil actions under the statute.

The creation of this administrative enforcement framework strongly suggests that Congress did not intend to imply a private right of action. *See American Federation of State, County & Municipal Employees Local 506 v. Private Industry Council of Trumbull County*, 942 F.2d 376, 380 (6th Cir. 1991) (noting that "provision of a comprehensive administrative procedure may indicate congressional intent against implying a private right of action" (internal quotation marks and citation omitted)). Nor is there any other indication that Congress intended a contrary interpretation of the statute, especially considering that the language of the statute did not "explicitly confer[]

a right directly on a class of persons that included the plaintiff in the case." *Cannon v. University of Chicago*, 441 U.S. 677, 690 n.13 (1979). In fact, as the district court properly points out, the decisions of our sister circuits "finding that § 40103 contained no private right of action were decided prior to 1994, when the statute was last amended. If Congress had intended to create a private right, it could have done so at that time." *Bowling Green*, 2007 U.S. Dist. LEXIS 87885, at *11.

Against this comprehensive administrative enforcement scheme, and the persuasive decisions of our sister circuits, Plaintiffs offer no evidence of Congress' intent to provide a private right of action. Indeed, Plaintiffs' opening brief does not even mention the holdings of *Interface Group* and *Montauk-Caribbean Airways*, let alone identify any legislative history suggesting that Congress intended to create a private right of action. Rather, Plaintiffs rely mainly on the purported lack of other remedies to assert that Congress must have intended to permit private parties to bring civil actions under the statute. Not only is that claim without merit, *see* 49 U.S.C. §§ 46101, 46106, 46107, but, as the Supreme Court has recognized, "the fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person." *Cannon*, 441 U.S. at 688.

Plaintiffs also argue that the other *Cort* factors favor finding an implied right of action. But, as the Supreme Court has observed, courts have been "especially reluctant" to imply causes of actions under statutes that are intended merely "for the benefit of the public at large," rather than a particular "class of persons that included the plaintiff in the case." *Id.* at 490 n.13. In any event, regardless of whether the remaining *Cort* factors favor Plaintiffs' claim, we agree with the First Circuit's conclusion that "these are minor factors that, here, cannot make a legal difference. Indeed, the Supreme [C]ourt has said that a private right of action should not be implied on the basis of [the third and fourth *Cort*] factors alone." *Interface Group*, 816 F.2d at 15 (citing *Transamerica*, 444 U.S. at 23, and *Touche Ross*, 442 U.S. at 575-76). Thus, our analysis confirms that it is "not compatible with the purpose and context of the legislative scheme to infer a private cause of action." *Thompson*, 484 U.S. at 183.

## V.

We therefore **AFFIRM** the judgment of the district court.