NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0321n.06

No. 09-1268

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 27, 2010**

LEONARD GREEN, Clerk

DAVID VERKADE,                                    )
                                                  )
    Plaintiff–Appellant,                          )
                                                  )
v.                                                )   ON APPEAL FROM THE UNITED
                                                  )   STATES DISTRICT COURT FOR THE
UNITED STATES POSTAL SERVICE;                     )   WESTERN DISTRICT OF MICHIGAN
JOHN E. POTTER, Postmaster General,               )
                                                  )
    Defendants–Appellees.                         )

Before:  GIBBONS, ROGERS, and KETHLEDGE, Circuit Judges.

**JULIA SMITH GIBBONS, Circuit Judge.**  Plaintiff–appellant David Verkade appeals the

district court's order of judgment in favor of defendants–appellees the United States Postal Service

("USPS") and John C. Potter, Postmaster General.  Verkade filed suit against the USPS alleging

interference with his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et*

*seq.*, and against Potter for unlawful discrimination under the Rehabilitation Act, 29 U.S.C. § 791

*et seq*.  After a bench trial, the district court entered judgment in favor of the defendants and, for the

following reasons, we affirm.

I.

David Verkade has been employed by the USPS since 1979, most recently as an express mail

clerk.  Verkade suffers from Ménière's disease, which is an abnormality of the inner ear that can

cause vertigo, severe dizziness, tinnitus, and hearing loss.  Verkade's USPS medical file indicates

that he received work restrictions due to Ménière's in 1997, 2003, and 2004. Consequently, he manually sorts mail and does not work near any automated machinery, which could trigger symptoms of Ménière's.

On October 27, 2006, Verkade submitted a medical certification form for intermittent FMLA leave for dizziness to the USPS's FMLA Office.[1] The certification was not tied to any particular absence but rather notified the USPS that because of "chronic dizziness," Verkade would be intermittently absent, at unpredictable times and for an undeterminable duration as they would "vary according to his symptoms." Verkade did not describe the underlying health condition causing the dizziness. The USPS denied the FMLA request because it "does not accept certifications unless and until an absence is requested pursuant to FMLA[, and it] reserve[d] the right to request current, complete medical certification at the time of absence, if it becomes necessary . . . to use FMLA for this condition." The letter also outlined in detail the deficiencies of the submitted certification that would need to be rectified in any subsequent FMLA request.

Verkade was absent due to dizziness on November 6–9, 2006. On November 7, the FMLA Office informed Verkade that, based on the information provided, the condition did not qualify as a "chronic condition requiring treatment." The FMLA Office also notified Verkade that his absence required a medical certification form to qualify for FMLA protection. Verkade subsequently submitted a note from his doctor, Eric Weinman, and an FMLA certification substantially identical

---

[1]Verkade communicated with two USPS offices: the FMLA Office processes requests for FMLA leave, and the Medical Unit maintains medical records and handles medical clearances, disability requests, disability-related workplace restrictions, and other related medical issues. The Medical Unit does not have authority to grant or deny FMLA protection or to disclose the contents of employees' medical files to the FMLA Office. Therefore, USPS employees' medical files are kept in the Medical Unit, and the FMLA Office does not have access to those files.

to the denied October 27 medical certification. On November 23, the FMLA Office notified Verkade that the medical certification was "incomplete," set out the deficiencies and the additional information necessary to grant FMLA leave, and directed Verkade to ask his physician to clarify certain statements. The FMLA Office gave Verkade fifteen days to resubmit. Verkade did not do so, and the FMLA Office denied him FMLA leave.

Meanwhile, on November 23, the FMLA Office forwarded Verkade's information to Dr. Pamela Zuidgeest, the USPS's contract physician, noting that the dizziness might present a safety problem for a mail processing clerk. Zuidgeest considered Verkade's medical file, the Employee and Labor Relations Manual ("ELM"), information on Ménière's disease, and the essential functions of his job as a mail clerk as she understood them from past experience and the job posting. She concluded that Verkade required return-to-work clearance following any absence due to dizziness.

Verkade again requested FMLA protection for an absence due to dizziness on December 11–13, 2006. The day after he returned to work, his supervisor informed Verkade that although he must receive medical clearance before returning to work, because he had worked one day without incident, he need not get clearance on this occasion. On December 20, 2006, Verkade received a letter from the Medical Unit reminding him of the medical clearance requirement and providing a contact number in the Medical Unit.

Verkade's next dizziness-related absence was December 27–28, 2006. He returned to work on December 29 but was sent home because he had not submitted medical clearance. After considerable prompting from the USPS, Verkade finally submitted medical clearance on January 11, 2007, and returned to work. The USPS consequently put him on absent-without-leave ("AWOL")

status from December 29 through January 10. Meanwhile, on December 30, the FMLA Office

notified Verkade that the December 11–13 and 27–29 absences were not FMLA-protected because

Verkade had failed to provide medical certification. The December 30 notification treated both

absences as one FMLA case and stated that the request for medical certification was mailed to

Verkade from Topeka on December 12, 2006.[2] Verkade claims that he never received any such

"Topeka packet."

Verkade again submitted a premature medical certification for FMLA leave on April 12,

2007. The FMLA Office again pointed out the deficiencies in the certification, what information

was necessary to cure it for future submissions, and reiterated that Verkade must get medical

clearance before returning to work. After an absence for dizziness on April 17, 2007, he again

received a Topeka packet requesting certification. Verkade submitted an FMLA certification form

identical to the previous certifications that had been denied as incomplete. On May 3, the FMLA

Office notified Verkade that the certification was incomplete and that he must get medical clearance

to return to work. In order to facilitate certification of FMLA-eligibility, the FMLA Office offered

to have Zuidgeest contact Verkade's doctor and included a release form. In response, Verkade

threatened suit and asserted that the USPS had illegally revealed his dizziness symptoms to

management. He prohibited the Medical Unit from revealing his underlying condition, stated that

he would forward a declaration from his doctor to the Medical Unit, and authorized Zuidgeest to

speak with his attorney, but not with Weinman. Once Zuidgeest received Weinman's declaration

---

[2]Customarily, when a USPS employee requests FMLA leave, the USPS office in Topeka sends the employee a packet requesting medical certification, including the necessary forms, and sets a fifteen-day deadline for submission of the certification.

in mid-May 2007, she followed up with Verkade's supervisors. After exchanging several emails, Zuidgeest visited the facility on June 28, 2007. Soon thereafter she withdrew the medical clearance requirement.

Verkade again requested FMLA leave for a dizziness-related absence on June 11–13, 2007. He returned to work on June 14 but was sent home for lack of medical clearance. Verkade was put on leave-without-pay ("LWOP") status for June 14–15, and AWOL status for June 18–26, and his subsequent request that those days count as annual leave was denied. Verkade sent the FMLA certification form and a return-to-work clearance on June 19. Although the Medical Unit cleared him to work on June 20, Verkade did not inquire about his status until he did so by mail on June 25.[3] He returned to work on June 26.

On July 3, the FMLA Office requested further clarification from Verkade regarding the June FMLA claim and requested authorization to contact Verkade's physician. In reply, Verkade questioned the need for further clarification given the May 3 Weinman declaration, a pending suit, filed on June 27, for a preliminary injunction against the requirement of return-to-work clearance, and prior Equal Employment Opportunity claims. The FMLA Office replied on July 10, outlining the deficiencies in the certification form and pointing out that Verkade had been notified of the same deficiencies in prior correspondence. The FMLA Office stated that it had received no declaration from a physician and denied FMLA leave.

Verkade was again absent due to dizziness on October 2–3 and 10–18, 2007. He submitted

---

[3]The USPS does not notify employees directly about their clearance status. USPS employees typically contact the Medical Unit or their supervisors to find out whether they are cleared to return to work. Occasionally employees contact the FMLA Office, which also receives notification of the clearance as a matter of course.

an incomplete certification and did not resubmit after being given fifteen days to cure the deficiencies. Consequently, the USPS denied him FLMA leave for those absences. Verkade later requested FMLA protection for absences on January 7–9, 17, and 31, February 1, and March 17–18, 2008. After attending depositions of FMLA Office staff in April 2008, Verkade submitted a successful FMLA certification. FMLA leave was granted retrospectively for all 2008 absences on April 22, 2008.

Verkade filed grievances with the USPS challenging the LWOP and AWOL status for the June and December absences. Verkade's union and the USPS settled, and Verkade received a $1,657.99 "lump sum payment" for the June 18–26, 2007, absences. The settlement also converted both LWOP and AWOL absences to work hours and prohibited the USPS from citing those absences in "any attendance-related action." A second grievance procedure resulted in a November 9, 2007, agreement that converted "48.0 hours of AWOL covering January 3, 2007 through January 10, 2007" to sick leave. The parties further agreed that the November 6–9, December 11–13, and December 27–28 absences could not be cited in any corrective action initiated against Verkade.

On June 27, 2007, Verkade filed a one-count complaint in federal district court alleging that the USPS had interfered with his FMLA rights by denying him FMLA protection for absences due to Ménière's disease. He sought compensatory and liquidated damages and a preliminary injunction barring the requirement of medical return-to-work clearance. Verkade later amended his complaint to include the June 11–13 absences in the FMLA interference count and to allege a violation of the Rehabilitation Act, 29 U.S.C. § 705.

After a three-day bench trial, the district court found no interference with Verkade's FMLA

rights and that he had failed to establish a *prima facie* case of discrimination under the Rehabilitation

Act. *Verkade v. U.S. Postal Serv.*, No. 1:07-cv-531, 2009 WL 279048 (W.D. Mich. Feb. 5, 2009).

The district court, therefore, entered judgment in favor of the defendants on all counts, *Id.* at *11,

and Verkade timely appealed.

## II.

We "review the district court's conclusions of law following a bench trial *de novo* and its

findings of fact for clear error." *Little Caesar Enters., Inc. v. OPPCO, LLC*, 219 F.3d 547, 550 (6th

Cir. 2000) (citing Fed. R. Civ. P. 52(a)). The Supreme Court has described the deference required

by such review:

> If the district court's account of the evidence is plausible in light of the record viewed
> in its entirety, the court of appeals may not reverse it even though convinced that had
> it been sitting as the trier of fact, it would have weighed the evidence differently.
> Where there are two permissible views of the evidence, the factfinder's choice
> between them cannot be clearly erroneous.

*Anderson v. City of Bessemer City*, 470 U.S. 564, 573–74 (1985). Furthermore, "[w]hen factual

findings rest upon credibility determinations, [we] afford[] great deference to the findings of the

district court." *Schroyer v. Frankel*, 197 F.3d 1170, 1173 (6th Cir. 1999) (citation omitted).

## III.

## A.

The district court's interpretations of the FMLA are questions of law that we review *de novo*.

*See Bowling Green v. Martin Land Dev. Co.*, 561 F.3d 556, 558 (6th Cir. 2009) (citations omitted).

As the district court noted:

> The FMLA affords those who cannot work as a result of a "serious health condition"
> up to twelve weeks of leave in one year. 29 U.S.C. § 2612(a)(1)(D). Under certain

circumstances, FMLA leave may be taken "intermittently or on a reduced leave schedule." 29 C.F.R. § 825.203(a).

Section 105 of the FMLA, 29 U.S.C. § 2615, prohibits covered employers such as the Postal Service from interfering with, restraining, or denying the exercise of their employees' rights under the statute and also makes it "unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(1), (a)(2), (b). These provisions are enforceable under § 107 of the FMLA, which imposes liability on "[a]ny employer who violates section 2615," and provides an individual right of action to sue in state or federal court. 29 U.S.C. § 2617(a)(1), (a)(2).

*Verkade*, 2009 WL 279048, at *6.

Verkade argues that the USPS interfered with his FMLA rights by (1) denying FMLA protection for and immediate restoration to work following his absences on December 27–28 because he did not submit a complete certification when the USPS did not request such certification in writing as required by 29 C.F.R. § 825.305(a) (2007); (2) denying FMLA protection for and immediate restoration to work following the June 11–13 absences for failing to submit a complete certification when the USPS failed to give him notice and opportunity to cure the incomplete certification in violation of 29 C.F.R. § 825.305(d) (2007); and (3) requiring return-to-work clearance for each absence due to an intermittent, chronic condition as prohibited by 29 C.F.R. § 825.310(e), (g) (2007).

In order to make out an interference claim under the FMLA pursuant to 29 U.S.C. § 2614(a), Verkade must demonstrate that (1) he was an eligible employee under the FMLA; (2) the USPS is an employer as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave the USPS notice of his intention to take leave; and (5) the USPS denied him FMLA benefits to which he was entitled. *See Edgar v. JAC Prods., Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). The USPS

concedes that only the fifth element is at issue.

The FMLA states that "[a]n employer may require that a request for leave . . . be supported by a certification issued by the health care provider . . . [, and t]he employee shall provide, in a timely manner, a copy of such certification to the employer." 29 U.S.C. § 2613(a). "An employer must give notice of a requirement for medical certification each time a certification is required; such notice must be written notice whenever required by § 825.301."[4] 29 C.F.R. § 825.305(a) (2007). An employer requesting certification should do so within two business days of the leave commencing, 29 C.F.R. § 825.305(c) (2007), and grant the employee no less than fifteen days to provide the certification, 29 C.F.R. § 825.311(b) (2007). "If the employee never produces the certification, the leave is not FMLA leave." 29 C.F.R. § 825.311(b) (2007). If the submitted certification is incomplete, the employer must "advise an employee whenever the employer finds a certification incomplete, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d) (2007).

In resolving the FMLA claim, the district court determined that the USPS was entitled to rely on prior incomplete certifications provided by Verkade—which it characterized as "negative certifications"—to deny FMLA protection in both December and June. *Verkade*, 2009 WL 279048, at *8 (citing *Nawrocki v. United Methodist Retirement Comtys., Inc.*, 174 F. App'x 334, 338 (6th Cir. 2006), and *Stoops v. One Call Commc'ns, Inc.*, 141 F.3d 309, 311 (7th Cir. 1998)). In *Nawrocki*, we concluded that "the original FMLA form *did not show that Plaintiff was entitled* to FMLA leave. Thus, Defendant was justified in denying this claim." *Nawrocki*, 174 F. App'x at 336 (emphasis

---

[4]The district court incorrectly applied the 2009 FMLA regulations. We review the case under the 2007 regulations, which were in effect when the underlying incidents took place.

added). The *Nawrocki* court relied on *Stoops*, which first defined "negative certification" as one that facially demonstrated that the absence was not FMLA-qualifying. *See Stoops*, 141 F.3d at 311. In *Nawrocki*, the employer found the medical condition non-qualifying because the physician indicated that the employee need not be absent for treatment. 174 F. App'x at 338. We found the employee's documentation to be a negative certification on which the employer "[wa]s entitled to rely . . . in denying FMLA leave." *Id.*

*Nawrocki* and *Stoops* thus do not hold that an "incomplete or insufficient certification" constitutes a "negative certification." Rather those cases hold only that certifications that, on their face, show that the employee is *not* entitled to FMLA protection may be relied upon to deny FMLA leave without further inquiry by the employer. *See also Hoffman v. Prof'l Med Team*, 394 F.3d 414, 418–19 (6th Cir. 2005) ("The Seventh Circuit has held that employers have no responsibility to conduct further investigation *when a certification is invalid on its face*." (emphasis added)). Furthermore, the district court's extension of the rule is inconsistent with FMLA regulations requiring the employer to notify the employee that his certification is incorrect and provide him with time to cure any deficiency. *See* 29 C.F.R. § 825.305(d) (2007).

Verkade's certifications were not facially invalid; rather, they were incomplete and lacked sufficient information to make a determination about whether his condition was FMLA-qualifying. Therefore, we conclude that *Nawrocki* and *Stoops* do not apply. However, under *de novo* review, we "may affirm on any grounds supported by the record even if different from the reasons of the district court." *Abercrombie & Fitch Stores, Inc. v. Am. Eagle Outfitters, Inc.*, 280 F.3d 619, 629 (6th Cir. 2002). We do so affirm for the following reasons.

1.

Verkade argues that he was not provided written notice of the requirement for certification for the December 27–28 absences or the minimum fifteen days required by the regulations to submit certification in violation of 29 C.F.R. § 825.301(c)(2)(i). The record supports his assertion. The regulations state that "written notice of the requirement shall be given with respect to *each employee notice* of a need for leave." 29 C.F.R. § 825.301(c)(2)(i) (emphasis added); *see also Perry v. Jaguar of Troy*, 353 F.3d 510, 514 & n.1 (6th Cir. 2003). The regulations also "clearly and unequivocally require[ the employer] to provide [an employee] with fifteen days from the date of its request to submit medical certification supporting her . . . leave." *Killian v. Yorozu Auto. Tenn., Inc.*, 454 F.3d 549, 555 (6th Cir. 2006) (citing 29 C.F.R. § 825.311). It is undisputed that the USPS did not request certification following Verkade's request for leave on December 27. Furthermore, it is undisputed that the USPS denied FMLA leave for the December 27–28 absences only one day after Verkade returned to work from that absence. The USPS therefore technically violated the FMLA regulations.

However, we have previously held that "the mere occurrence of interference with an employee's FMLA rights is not a *per se* FMLA violation." *Allen v. Butler County Comm'rs*, 331 F. App'x 389, 394 (6th Cir. 2009). More specifically,

> § 2617 provides no relief unless the employee has been prejudiced by the violation: The employer is liable only for compensation and benefits lost "by reason of the violation," § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment, reinstatement, and promotion, § 2617(a)(1)(B). The remedy is tailored to the harm suffered.

*Cavin v. Honda of Am. Mfg.*, 346 F.3d 713, 726 (6th Cir. 2003) (quoting *Ragsdale v. Wolverine*

*World Wide, Inc.*, 535 U.S. 81, 88–90 (2002)). Verkade was not terminated, disciplined, or demoted because of his absence on December 27–28, and he suffered no harm from the USPS's failure to provide written notice of the certification requirement specifically for the December 27–28 absences. He was also compensated, at least in part, by a settlement for this absence, and his position was held open upon his return. Relief may be granted only when the loss or harm is "*by reason of* the violation." *See* 29 U.S.C. § 2617(a)(1)(A)(i)(I) (emphasis added). Because Verkade had communicated with the FMLA Office at considerable length regarding the required elements of certification by the time he requested FMLA leave for his December 27–28 absence and thus was well aware of what was required, any harm was not by reason of the technical violation but by reason of his own noncompliance with the certification requirement. He is therefore not entitled to relief for his claim with respect to this absence.

2.

Verkade next argues that the USPS interfered with his FMLA rights by not allowing him a reasonable time to cure the deficiencies in the certification he submitted regarding his June 11–13 absence. We have recognized that "an employer who finds an employee's certification to be 'incomplete' has a duty to inform the employee of the deficiency and provide the employee a 'reasonable opportunity' to cure it." *Novak v. Metrohealth Med. Ctr.*, 503 F.3d 572, 579 (6th Cir. 2007) (quoting *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005) (citing 29 C.F.R. § 825.305(d))). However, there is no statute or regulation that defines "a reasonable opportunity." *See id.*

On July 3, the FMLA Office informed Verkade that his certification was incomplete and that

further information would be necessary to provide FMLA protection. The FMLA Office included a release form to enable the USPS to contact Verkade's physician to resolve the outstanding questions. The letter warned that "failure to provide information that an employer is entitled to under the FMLA could jeopardize the employee's FMLA entitlement." Verkade replied to the letter on July 6, asking what clarification was necessary, referring to Weinman's declaration, and declining to grant authorization until further explanation was provided. On July 10, the FMLA Office responded, noting that it had not received Weinman's declaration and referring to prior correspondence outlining the required elements of a certification. Finally, in the same letter, the FMLA office denied FMLA leave. Verkade submitted no further information following this letter.

Although the FMLA Office denied FMLA protection without responding to Verkade's request for clarification, the USPS did not interfere with Verkade's rights because he was already on notice of what certification was required. Verkade submitted five medical certifications between October 2006 and June 2007, all of which were substantively identical. The USPS informed Verkade after each submission that they were premature or incomplete. Letters sent in November 2006 and April 2007 outlined the specific deficiencies and what information was necessary to cure them. The FMLA Office had also previously provided an opportunity for Verkade to authorize clarification through his physician, which he declined. Therefore, although the USPS provided only five days—effectively one week—in July 2007 to cure the deficient certification or to authorize Zuidgeest to consult Weinman, the history of Verkade's interaction with the FMLA Office renders that period of time "a reasonable opportunity." Furthermore, the lack of opportunity and clarification did not harm Verkade, who continued employment at the same position with the same benefits and

was compensated by settlement for lost wages and adjusted leave status.

3.

We next turn to Verkade's allegation that the return-to-work requirement interfered with his FMLA right to immediate restoration to his position following an absence. Pursuant to 29 U.S.C. § 2614(a), "any eligible employee who takes leave under [the FMLA] shall be entitled, on return from such leave . . . to be restored by the employer to the position of employment held by the employee when the leave commenced" or to "an equivalent position with equivalent employment benefits." *See also Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 250–51 (6th Cir. 2004).

An employer may require medical clearance following FMLA leave if the employer has "a uniformly-applied policy or practice that requires all similarly-situated employees (*i.e.*, same occupation, same serious health condition) who take leave for such conditions to obtain and present certification from the employee's health care provider that the employee is able to resume work." 29 C.F.R. § 825.310(a) (2007). The scope of the clearance is limited "to the particular health condition that caused the employee's need for FMLA leave [and t]he certification itself need only be a simple statement of an employee's ability to return to work." 29 C.F.R. § 825.310(c) (2007). Furthermore, "[a]n employer may delay restoration to employment until an employee submits a required fitness-for-duty certification unless the employer failed to provide the notices required." 29 C.F.R. § 825.310(f) (2007). However, "[a]n employer is not entitled to certification of fitness to return to duty when the employee takes intermittent leave." 29 C.F.R. § 825.310(g) (2007).

Verkade argues that because he requested FMLA leave for an intermittent, chronic medical condition, the USPS cannot require medical clearance. Verkade also argues that the return-to-work

clearance requirement violated the FMLA regulations limiting such clearances to those set out in a uniform policy. *See* 29 C.F.R. § 825.311(c). The ELM provided such a policy, and, therefore, this argument is without merit. Furthermore, this court has held that "an employee can be required to comply with the reasonable requirements of an employer's sick leave policy while on FMLA leave," even if the FMLA requirements are less stringent. *See Allen*, 331 F. App'x at 394 (discussing *Harrell v. U.S. Postal Serv.*, 445 F.3d 913 (7th Cir. 2006), which found the USPS ELM to be incorporated into the USPS collective bargaining agreement and, therefore, not trumped by the FMLA under 29 U.S.C. § 2614(a)(4)). Finally, although Verkade argues that his FMLA condition is intermittent and chronic, it had not been approved as such at the time the USPS imposed a return-to-work clearance requirement, and the USPS made clear in its November 23, 2006, and April 13, 2007, letters that his submitted certifications were insufficient to support FMLA protection for a chronic, intermittent condition.

Moreover, Verkade suffered no harm because of the requirement. Verkade was on notice that he was required to obtain return-to-work clearance and that the ELM § 865.1 permits the USPS to require return-to-work clearance following non-FMLA absences "when management has a reasonable belief, based upon reliable and objective information . . . that the employee may not be able to perform the essential functions of his/her position, or . . . may pose a direct threat to the health and safety of himself/herself or others due to that medical condition." The record demonstrates that Zuidgeest had a reasonable belief—based on information provided on the certificate (dizziness), research she conducted on Ménière's disease, and her personal knowledge of mail clerks' work environments and tasks—that Verkade's dizziness could pose a safety threat to

himself and others if he were working around fast-moving, large machinery. Because the clearance requirement was reasonable under the ELM, and Verkade had knowledge of the requirement, any delay in granting clearance was due to his delay rather than to any action or inaction of the USPS.

## B.

The Rehabilitation Act, 29 U.S.C. § 791 *et seq.*, rather than the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, provides the exclusive remedy for USPS employees asserting a claim of disability discrimination. 42 U.S.C. § 12111(5)(B)(i); *Jones v. Potter*, 488 F.3d 397, 403 (6th Cir. 2007). Under the Rehabilitation Act, the USPS is prohibited from discriminating against an employee "solely by reason of her or his disability." 29 U.S.C. § 794(a). To establish a *prima facie* case of discrimination under the Act, Verkade must demonstrate that: "1) he is an individual with a disability; 2) he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) he [suffered an adverse employment action] solely by reason of his handicap." *Jones*, 488 F.3d at 403 (quoting *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996)). Only the third prong remains in dispute.

Verkade argues that being "put off the clock twice and required to provide medical clearance due to safety concerns," which resulted in a loss of $2,912.93 in wages and 7.68 hours of sick leave, constitutes an adverse employment action under the Rehabilitation Act. Assuming *arguendo*, as did the district court, that the requirement was an adverse employment action, Verkade's claim fails.

Although the USPS determined that Verkade must submit a return-to-work clearance because of his dizziness, that does not *per se* amount to discrimination under the Rehabilitation Act. That act, unlike the ADA, "permits an employer to make a decision *because of* a handicap if the handicap

is not the *sole* reason for the decision." *Burns v. City of Columbus, Dep't of Public Safety*, 91 F.3d 836, 841–42 (6th Cir. 1996) (emphasis in original); *see also Macy v. Hopkins County Sch. Bd. of Educ.*, 484 F.3d 357, 364 n.2 (6th Cir. 2007) (collecting cases). "[I]n cases in which the grantee states that it made the decision *because of* the handicap, the central factual dispute becomes whether the decision was made *solely because of* the handicap." *Burns*, *91 F.3d* at 842 (emphases in original). An employer makes an adverse employment decision "solely" because of its employee's disability when "the employer has no reason left to rely on to justify its decision *other* than the employee's disability." *Monette*, 90 F.3d at 1183 n.9 (emphasis in original).

The record demonstrates, and the district court did not clearly erroneously determine, that the USPS required medical clearance because of Verkade's dizziness *and* because it feared that the dizziness could pose safety concerns in a facility in which heavy machinery operated *and* because he failed to provide detailed information regarding the effect of his symptoms to the Medical Unit. The record also establishes that the USPS sent Verkade home when he returned to work without clearance because he failed to submit the clearance to the Medical Unit as previously instructed—not because of his disability. Because Verkade knew when he was sent home on December 29 and June 14 that he could return to work only once he submitted medical clearance, the number of days elapsing between being sent home and submitting that clearance were under his control. Consequently, the forced leave was due to Verkade's failure to promptly provide the required medical clearance to the USPS rather than due to his disability.

Finally, Verkade fails to present any evidence of discriminatory intent on behalf of Zuidgeest or the USPS. "[P]roof of discriminatory intent is necessary to prevail" on a Rehabilitation Act claim.

*Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437, 443 (6th Cir. 1991). "[A]n employer may base a decision on an employee's actual limitations, even if those limitations result from a disability." *Gillen v. Fallon Ambulance Serv., Inc.*, 283 F.3d 11, 29 (1st Cir. 2002) (citation omitted). "The trick . . . is to distinguish between unfounded stereotypes, on the one hand, and frank assessments of the actual consequences of a disability, on the other hand." *Id.* "To avoid liability in this sort of situation, the evidence must show that the employer understood the nature, extent, and implications of the prospective employee's particular impairment, and that the employment decision reflected that understanding." *Id.* (citing *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000)). Zuidgeest reviewed Verkade's medical file and researched Ménière's disease. Her concerns regarding his safety following an episode of dizziness were not unreasonable. After receiving Weinman's declaration in mid-May 2007, Zuidgeest reevaluated her earlier decision based on the additional documentation that Verkade provided and, after further inquiries, removed the clearance requirement. Her review was, therefore, individualized and based on the pertinent information she had before her at the time. Therefore, Verkade's Rehabilitation Act claim is meritless.

IV.

Thus, we affirm the district court's order granting judgment in favor of the defendants.