**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 11a0787n.06

No. 10-3842

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

*Nov 22, 2011*

LEONARD GREEN, Clerk

| | | |
|---|---|---|
| JAMI L. COFFMAN, | ) | |
| | ) | |
| **Plaintiff-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| FORD MOTOR COMPANY, | ) | |
| | ) | |
| **Defendant-Appellee.** | ) | **O P I N I O N** |
| | ) | |

**Before: MARTIN, MOORE, and COOK, Circuit Judges.**

**KAREN NELSON MOORE, Circuit Judge.** Plaintiff-Appellant Jami L. Coffman filed suit in 2008 against her former employer, Defendant-Appellee Ford Motor Company ("Ford"), alleging that Ford unlawfully retaliated against her after she sought to exercise her rights under the Family and Medical Leave Act (the "FMLA"). Finding both that Coffman's evidence failed to establish that Ford's reason for her termination was pretextual and that Coffman did not show the willfulness required to bring her claim within the applicable statute of limitations, the district court granted Ford summary judgment. We **AFFIRM** on the ground that Coffman fell short of demonstrating a material issue of fact on the merits of her retaliation claim. Because we decide the case on pretext grounds, we do not address Coffman's statute-of-limitations argument.

## I.  BACKGROUND & PROCEDURE

Coffman began working as a manufacturing technician at Ford's Sharonville, Ohio transmission plant in July 1999.  In 2001, she became a quality coordinator, a position that she held until her termination in July 2005.  Coffman was also a member of the United Auto Workers, Local 863 ("Union").  In late 2004, Coffman began frequently missing work days and requesting leave through Ford's medical department (the "Plant Hospital").  Although Coffman properly supported her absences on many of those dates—from 2004 to 2005 Ford approved eighty-six work days (688 hours) of medical leave—Ford cited at least ten periods for which Coffman did not submit timely documentation.  Those ten occurrences resulted in progressive disciplinary action, which culminated in Coffman's termination shortly after she was diagnosed with obstructive sleep apnea.

Ford employees were eligible for leave under both the FMLA and the company's collective bargaining agreement ("CBA").  Upon requesting leave, employees would receive two documents: a Form 5166, which was to be completed by the treating physician, and an FMLA notice stating that:

> [i]f your leave request is based on your own or an eligible family member's serious health condition you must complete and return appropriate medical certification (e.g., Form 5166, 5166B or 5166E), for the initial leave or an extension, within 15 calendar days of the Company's written request.  This notice is the Company's written request for this certification.  If you fail to return the completed certification within 15 calendar days, the Company may delay commencement of your FMLA leave until the certification is submitted, you may be classified as absent without leave, and you may not have any rights under FMLA for the portion of the absence or leave before you do return a completed certification.  In addition, you may lose your rights under FMLA altogether and be subject to termination.

R. 18-4 (Def.'s Mot. for Summ. J. Ex. 4).[1]  At that time, a Plant Hospital staff member would also

indicate on the Form 5166 whether the requesting employee was eligible for FMLA leave.  To do

this, the staff member would check computer records to ensure that the employee had worked the

requisite 1,250 hours during the previous twelve months and that the employee had not already used

her 480-hour allotment of FMLA leave.  *See* 29 U.S.C. § 2611(2) (defining "[e]ligible employee").

Ford's policies were clear that failure to provide timely justification would result in an

employee being designated absent without leave ("AWOL").  If an employee was AWOL three times

in three months, the company would begin instituting progressive discipline.  The discipline policy

imposed penalties ranging from unpaid suspension at the time of the employee's disciplinary hearing

for the first set of occurrences to termination upon the tenth occurrence.  An employee with multiple

occurrences leading up to a disciplinary hearing would receive a separate penalty for each infraction.

Ford terminated Coffman on July 25, 2005 for repeated absenteeism resulting from ten

AWOL occurrences in an eight-month period.  Coffman filed this action alleging FMLA retaliation

on July 23, 2008.  According to Coffman, some of those occurrences were FMLA protected because

a jury could determine both that she had submitted appropriate documentation and that her March

and June absences constituted intermittent leave related to her diagnosis of obstructive sleep apnea

---

[1]The CBA similarly provided that "[a]n employee who is unable to work because of injury or illness, and who furnishes satisfactory evidence thereof, shall be granted an automatic sick leave of absence covering the period of such disability."  R. 39-1 (Supp. Info. Ex. A).  Longstanding company procedure mandated that an employee who took CBA leave submit supporting documents within five days of his or her return, though the presence of "extenuating circumstances" could justify a two-to-three-day grace period.  R. 18-3 (Snell Aff. ¶ 6).

in the summer of 2005. Ford filed a motion for summary judgment, which the district court granted

on two grounds. First, the district court held that although Coffman had established a prima facie

case of retaliation, she failed to rebut Ford's nondiscriminatory explanation for her dismissal.

*Coffman v. Ford Motor Co.*, 719 F. Supp. 2d 856, 863, 867 (S.D. Ohio 2010). Second, the district

court held that Coffman had not shown that Ford acted willfully, which rendered her action time-

barred under the two-year statute of limitations for nonwillful FMLA violations. *Id.* at 867–68.

Coffman filed this timely appeal.

## II. ANALYSIS

"We review a district court's grant of summary judgment de novo and draw all reasonable

inferences in favor of the nonmoving party." *Branham v. Gannett Satellite Info. Network, Inc.*, 619

F.3d 563, 568 (6th Cir. 2010). Summary judgment is warranted when there is "no genuine dispute

as to any material fact" and "the movant is entitled to judgment as a matter of law." FED. R. CIV. P.

56(a). A genuine dispute exists "only when there is sufficient 'evidence on which the jury could

reasonably find for the plaintiff.'" *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 314 (6th

Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

The FMLA entitles eligible employees to twelve weeks of leave per year for, among other

things, "a serious health condition that makes the employee unable to perform the functions of the

position of such employee." 29 U.S.C. § 2612 (a)(1)(D).[2] Employers are prohibited from retaliating

---

[2]A "serious health condition" is defined in relevant part as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

or discriminating against an employee who exercises her rights under the Act. *Id.* § 2615(a)(2); *see also* 29 C.F.R. § 825.220(c) (2004)[3] (prohibiting employers from "discriminating against employees . . . who have used FMLA leave").

Retaliation claims based on indirect evidence are subject to the *McDonnell Douglas* burden-shifting test. *Skrjanc*, 272 F.3d at 313 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Once Coffman presented a prima facie claim of retaliation, the burden shifted to Ford to state a nondiscriminatory reason for her termination. *See id.* at 315. The burden then shifted back to Coffman to demonstrate that Ford's explanation was mere pretext for discrimination. *See id.* At that point, her burden was to produce "evidence from which a jury could reasonably doubt the employer's explanation." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 n.4 (6th Cir. 2009).

Because Ford does not contest the district court's conclusion that Coffman stated a prima facie case of retaliation, the only question on appeal is whether Coffman established that Ford's justification for terminating her was pretextual. Coffman may establish pretext by showing that Ford's proffered reasons "(1) have no basis in fact; (2) did not actually motiv[at]e the action; or (3) were insufficient to warrant the action." *Staunch v. Continental Airlines, Inc.*, 511 F.3d 625, 631 (6th Cir.), *cert. denied*, 555 U.S. 883 (2008). "[R]etaliation claims turn on the employer's motive for discharging the plaintiff." *Bryson v. Regis Corp.*, 498 F.3d 561, 572 (6th Cir. 2007). Thus, Coffman must put forward evidence that would allow a reasonable fact-finder to conclude that

---

[3]Unless otherwise noted, we apply the 2004 regulations that were in place at the time of Coffman's termination.

Ford's stated reason for her termination "is not the true reason and is simply a pretext for unlawful retaliation." *Id.* In other words, she "must show that the sheer weight of the circumstantial evidence of discrimination makes it more likely than not that the employer's explanation is a pretext, or coverup." *Abdulnour v. Campbell Soup Supply Co.*, 502 F.3d 496, 503 (6th Cir. 2007) (internal quotation marks omitted).

Coffman has not come forward with facts to support such a conclusion. As discussed below, we generally agree with the district court's evaluation of Coffman's absences, and, because she has presented no other facts to support a reasonable juror's conclusion that Ford engaged in intentional discrimination, we affirm.

## A. THE DISPUTED ABSENCES

### 1. November 18–19 and December 16–17, 2004

Coffman first disputes Ford's reliance on the November and December 16 occurrences on the ground that Ford did not cite them at her final disciplinary hearing as absences that contributed to her termination. In making this argument, however, Coffman fails to mention the undisputed fact that Ford's progressive discipline policy required three occurrences in a three-month period before an employee would be subject to penalty. Consistent with that requirement, the disciplinary action report completed at the initial hearing mentioned all of these dates as justifying the initial adverse action. Thus, Ford's current reliance on the November and December 16 occurrences is fully consistent with its earlier treatment of Coffman's conduct and provides no support for her allegations of pretext.

6

Coffman's challenge to the underlying factual bases for the November and December occurrences also fails to raise any material dispute. Coffman neglected to provide Ford with support for her November absences until December 16, rendering the documentation untimely under both the FMLA and the CBA. Coffman's December absences suffered from a similar deficiency.[4] Even if we assume, as Coffman argues, that she did everything possible to return the appropriate forms after her January 21, 2005 disciplinary hearing, that does not change the fact that she again failed to justify her absences within the time period that would have entitled her to leave. *Cf. Coulter v. Deloitte Consulting L.L.C.*, 79 F. App'x 864, 868 (6th Cir. 2003) (unpublished opinion) (stating that "bare denials" and "subjective beliefs" are "an insufficient basis upon which to vacate summary judgment").

### 2. March 16–18 and March 21–22, 2005

Coffman's claim that Ford improperly classified her as AWOL for two periods in March presents a closer question but also ultimately fails. Coffman argues that she timely certified her March absences via two Form 5166s, which she submitted on April 1. Unlike the other absences, the issue here is not timeliness, but instead centers on the validity of the documentation.

Coffman submitted her paperwork for the March 16 to 22 absences on two separate forms, each presented within hours of the other, and with one citing "anxiety due to medication adjustment"

---

[4]Coffman's argument that a nurse in the Plant Hospital found her "unfit for work," Appellant Br. at 20 (citing R. 35 (Coffman Dep. Ex. 19)), also fails to raise any material dispute, as Coffman failed to show that the designation reflected anything more than her *request* for leave. That initial request did not eliminate her responsibility to provide timely documentary support for her absences. *See* R. 38-1 (Lin Supp. Decl. ¶ 4).

and the other citing "EEG & other testing [and] petite mall [sic] seizures" as justification for her leave. R. 35-1 (Coffman Dep. Ex. 32–33). Neither form provided any additional medical facts to support the diagnoses. After reviewing the documents, Dr. Lin, who was responsible for evaluating the sufficiency of medical certifications, made an initial determination that the forms were medically insufficient to justify FMLA leave. His conclusion was based on two observations: (1) the divergent diagnoses for the same period, which left him unable to discern "what medical condition (if any) actually prevented [Coffman] from working from March 16 through March 22," R. 39-2 (2d Supp. Decl. of Dr. Chun-I John Lin ¶ 10); and (2) the obvious discrepancy between the physician signatures on those certifications and the signatures on previous certifications.

Coffman argues that in light of Dr. Lin's determination, Ford was obligated to request in writing the additional information needed to support her request for medical leave before Ford could issue a blanket denial. Although that obligation exists in most cases, it does not apply here.

The 2004 version of the regulations stated that "[t]he employer shall advise an employee whenever the employer finds a certification *incomplete*, and provide the employee a reasonable opportunity to cure any such deficiency." 29 C.F.R. § 825.305(d) (2004) (emphasis added).[5] Our cases have consistently enforced this requirement, reaffirming employers' affirmative duty to seek additional information when they have notice of an employee's potential need for FMLA leave but are faced with an incomplete medical certification. *See, e.g.*, *Novak v. MetroHealth Med. Ctr.*, 503

---

[5]Coffman asserts that the notice had to be in writing. Unlike the current regulation, the 2004 version contained no such requirement.

F.3d 572, 579 (6th Cir. 2007); *Sorrell v. Rinker Materials Corp.*, 395 F.3d 332, 337 (6th Cir. 2005); *Hoffman v. Prof'l Med Team*, 394 F.3d 414, 418 (6th Cir. 2005). But incomplete certifications are distinguishable from invalid ones. *See Verkade v. U.S. Postal Serv.*, 378 F. App'x 567, 574 (6th Cir. 2010) (unpublished opinion). A valid certification "must show that the employee's serious health condition makes her unable to perform job functions." *Hoffman*, 394 F.3d at 419. Although certifications that contain all required information[6] are presumptively valid, an employer can rebut the presumption of sufficiency by demonstrating that a certification is invalid, contradictory, or of an otherwise suspicious nature. *Novak*, 503 F.3d at 578. If the certification is invalid on its face, that in some cases *may* be enough for an employer to deny FMLA leave without engaging in further inquiry. *Verkade*, 378 F. App'x at 574.

Here, when faced with contradictory, questionable certifications, Dr. Lin sought clarification by asking Coffman to sign a document requesting that her physician provide any medical records pertaining to the dates in question. In response to the request, Coffman's physician provided a single document, which indicated only a March 17, 2005 date of service, a chief complaint of depression (not seizures), and a list of medications that actually did not support Coffman's assertion that her prescriptions had recently changed. Thus, rather than supporting the forms Coffman had already submitted, the new information only created new contradictions. Under these circumstances, we do not think Ford had any further duty to seek information to support Coffman's leave request. *See*

---

[6]At a minimum, this includes "(1) the date on which the serious health condition commenced; (2) the probable duration of the condition; [and] (3) the appropriate medical facts within the knowledge of the health care provider regarding the condition." 29 U.S.C. § 2613(b).

*Novak*, 503 F.3d at 578; *see also Culpepper v. BlueCross BlueShield of Tenn., Inc.*, 321 F. App'x 491, 496–97 (6th Cir. 2009) (unpublished opinion) (concluding that a document "of questionable reliability"—e.g., lacking a date, devoid of detailed medical explanations, and containing only the signature of a staff member in the physician's office—"[did] not constitute an acceptable form of certification of a serious health condition under the FMLA").[7]

### 3. June 8, 13, 15, and 17–20, 2005

Coffman's final argument is that her June absences should have been considered intermittent FMLA leave because a jury could conclude those absences were based on the same illness—her newly diagnosed sleep apnea—as the March and April absences. As a result, Coffman argues, Ford incorrectly determined that she had not worked enough hours to be eligible for FMLA leave because the eligibility determination should have been made in March rather than June. Coffman, however, provided no evidence to support any request for intermittent leave, let alone evidence suggesting Ford granted it. *Cf.* 29 U.S.C. § 2612(b)(1) ("Leave . . . shall not be taken by an employee intermittently . . . unless the employee and the employer of the employee agree otherwise.").

---

[7]This is not to say that employers can generally avoid liability by deeming employees' medical certifications to be facially invalid. Employers facing questionable certifications have two preferable options: they can require the employee to obtain a second opinion from a different provider at the employer's expense or, after granting the employee an opportunity to correct any shortcomings, they can obtain the employee's permission to clarify or authenticate a questionable certification with the original health-care provider. 29 C.F.R. § 825.307(a)–(b) (2010); *see also* 29 U.S.C. § 2613(c). Although these measures are discretionary, *see Sorrell*, 395 F.3d at 337, utilizing them would avoid the factual disputes and questions of reasonableness that conceivably arise from an employer's decision to classify an FMLA request as facially invalid without first working with the employee to resolve any discrepancies.

Coffman's eligibility for FMLA leave in March therefore had no bearing on her later eligibility, and, because the evidence is clear that Coffman was ineligible for FMLA leave in June due to insufficient hours, these absences do not support her retaliation claim. *See Staunch*, 511 F.3d at 631 (holding that because the evidence was clear that the plaintiff had not worked the 1,250 hours required to be an "eligible employee," her FMLA claims failed as a matter of law).

## B. NO EVIDENCE OF DISCRIMINATORY INTENT

In addition to being unable to show a material dispute as to her individual AWOL occurrences, Coffman has presented no evidence to suggest that Ford harbored any discriminatory intent. *See Bryson*, 498 F.3d at 570 (observing that despite the shifting burdens of production, the plaintiff never relinquishes the "burden of persuading the trier of fact that the defendant *intentionally* discriminated against the plaintiff" (emphasis added) (internal quotation marks omitted)); *see also Chen*, 580 F.3d at 400 n.4 ("[A]t bottom, the question is always whether the employer made up its stated reason to conceal intentional discrimination." (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) ("[A] reason cannot be proved to be a 'pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason." (alteration in original)))).

To support her assertion that the evidence demonstrates an ulterior motive on Ford's part, Coffman points to manufactured inconsistencies, but produces no real evidentiary support. Moreover, our independent review of the record actually cuts against Coffman's argument that the AWOL occurrences were not the real reason for her termination. Although far from dispositive, Coffman conceded that no one so much as suggested that her termination was related to her FMLA

11

leave. Nor does the record suggest that any of her supervisors ever complained about any of the eighty-six legitimate leave days she had taken. Finally, when it came to her unsubstantiated absences, the record indicates that Ford treated her no differently than any other employee who neglected to submit timely certification. *See* R. 25 (Howard Dep. at 43–44) (indicating that Coffman's Union representative had no reason to believe Ford treated Coffman less favorably because she had taken medical leave and reiterating that Ford was strict with all of its employees in enforcing its requirement that they submit certification for FMLA or CBA leave in a "timely fashion"). Viewed in its entirety, this evidence—and particularly Coffman's inability to point to *any* facts that could suggest an alternative explanation for Ford's actions—simply does not support the proposition that Ford's asserted reason for terminating Coffman was pretextual, and we cannot say that the district court erred in granting Ford's motion for summary judgment on the merits.

## III. CONCLUSION

For the reasons discussed above, we conclude that Coffman failed to establish that Ford's reason for terminating her was pretextual. Therefore, we **AFFIRM** the district court's judgment.