NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0149n.06

No. 09-5118

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
**Mar 11, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| FRANKLIN COUNTY, KENTUCKY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| TRAVELERS PROPERTY CASUALTY | ) | THE EASTERN DISTRICT OF |
| INSURANCE CO. OF AMERICA; CHARTER | ) | KENTUCKY |
| OAK INSURANCE CO.; NORTHLAND | ) | |
| INSURANCE CO.; PHOENIX INSURANCE CO.; | ) | |
| ST. PAUL FIRE & MARINE INSURANCE CO.; | ) | |
| STANDARD FIRE INSURANCE CO.; | ) | |
| TRAVELERS CASUALTY AND SURETY | ) | |
| COMPANY; TRAVELERS CASUALTY AND | ) | |
| SURETY COMPANY OF AMERICA; | ) | |
| TRAVELERS HOME & MARINE INSURANCE | ) | |
| COMPANY; TRAVELERS INDEMNITY | ) | |
| COMPANY; TRAVELERS INDEMNITY CO. OF | ) | |
| AMERICA; TRAVELERS PROPERTY | ) | |
| CASUALTY INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

Before: SUHRHEINRICH, McKEAGUE, and KETHLEDGE, Circuit Judges.

KETHLEDGE, Circuit Judge. In this diversity case, Franklin County, Kentucky seeks to recover taxes it claims it is owed by the defendant insurance companies, which are various subsidiaries of the Travelers Companies, Inc. The district court held that the County's exclusive remedy for this alleged underpayment was an administrative proceeding before the Kentucky Office of Insurance. We agree, and affirm.

I.

The County imposes a tax on insurance companies doing business within its borders. Its authority to do so derives from Ky. Rev. Stat. § 91A.080; another statute, Ky. Rev. Stat. § 68.197(4)(d), states that "[n]o license tax shall be imposed or collected from any insurance company except as provided in" § 91A.080. Under the regime set out in § 91A.080, taxes are calculated as a percentage of premiums collected on risks located within the local government's geographic limits (or, in the case of life insurance, on lives of persons residing within those boundaries). *See id.* § 91A.080(2), (3). Insurance companies are expected to collect the taxes from their policyholders and then remit the funds to the appropriate local government. *See id.* § 91A.080(4).

The County alleges that defendants have failed to remit the taxes owed on all insured risks located within the County. The problem, according to the complaint, is that defendants have used policyholders' zip codes to determine where insured risks are located; and because zip codes can straddle local-government boundaries, that practice can result in misallocation of tax revenue. For example, the same zip code covers the entire City of Frankfort and most of Franklin County. The complaint alleges that, as a result of using zip codes to identify the location of insured risks, defendants have misdirected tax revenues to the City that were properly payable to the County. The complaint seeks an equitable accounting to determine whether defendants have remitted all the taxes they owed, as well as damages based on the alleged underpayments.

The district court dismissed the complaint under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction. In the district court's view, administrative procedures before the Kentucky

Office of Insurance afforded the exclusive remedy available to the County for recovering unpaid premium taxes. The court further reasoned that, even if these procedures were not exclusive, the County's failure to pursue them before bringing suit meant that it had not exhausted its available administrative remedies.

Under the administrative regime in place when this case was filed, a local government could request the Office of Insurance to "examine, or cause to be examined by contract with qualified auditors, the books or records of the insurance companies . . . to determine whether the fee or tax is being properly collected and remitted[.]" Ky. Rev. Stat. § 91A.080(7)(a). An insurer's willful failure to collect and remit the tax could constitute grounds for revoking the insurer's license to do business, *id.* § 91A.080(7)(b), or assessing a penalty fee, payable to the local government, of up to ten percent of "the additional license fees or taxes determined to be owed[.]" *Id.* § 91A.080(7)(c).

This litigation was filed three days before the effective date of recent amendments to the insurance-tax provisions that would otherwise answer the legal questions presented here. These amendments, enacted in 2008 in apparent response to the Eastern District of Kentucky's decision in *Kendrick v. Standard Fire Insurance Co.*, No. 06-141-DLB, 2007 WL 1035018 (E.D. Ky. Mar. 31, 2007)—holding that policyholders could bring a private cause of action against their insurance companies to recover overpaid premium taxes—left § 91A.080 itself unchanged in most relevant respects. One difference, however, is that the term "audit" has been substituted for the "examination" provided for under the prior version of § 91A.080. *See* Ky. Rev. Stat. § 91A.080(7)(a). More significantly, the amendments added a new section to Chapter 91A spelling out comprehensive procedures for resolving claims of "nonpayment, underpayment, or overpayment"

of any premium tax, whether brought by insurers, policyholders, or local governments. Ky. Rev. Stat. § 91A.0804(1). The new procedures include several rounds of administrative review, including a hearing governed by Kentucky's general rules for administrative adjudication, *see id.* § 91A.0804(5), which provide that the agency's final order is subject to judicial review. *See id.* § 13B.140(1).

New § 91A.0804 provides that "[n]o legal action shall be filed by any party prior to the exhaustion of all administrative remedies provided under this section." Ky. Rev. Stat. § 91A.0804(7). It also states that its procedures afford the "sole and exclusive method" for resolving claims by any insurance company, policyholder, or local government for "nonpayment, underpayment, or overpayment" of any premium tax. *Id.* § 91A.0804(1). That exclusivity provision does not apply, however, to any assessment by a local government "that is affected by litigation pending on July 15, 2008," *id.*, as this case was.

## II.

In concluding that this case fell within the "exclusive jurisdiction" of the Kentucky Office of Insurance, the district court reasoned that the administrative-examination procedures set out in Ky. Rev. Stat. § 91A.080(7) afford "the exclusive remedy available to local governments seeking to collect unremitted tax revenue." As an initial matter, that rationale does not support dismissal for lack of jurisdiction. At bottom, the district court's decision rested on its conclusion that a local government cannot assert a private right of action to recover unpaid taxes, and must instead request the Office of Insurance to commence an enforcement proceeding on its behalf. But the question whether a party has a valid cause of action is separate from the question whether the court has

jurisdiction. Indeed, whether a party has a cause of action is precisely the sort of merits question that a court may not reach *unless* it has jurisdiction. *See Steel Co. v. Citizens for a Better Env't.*, 523 U.S. 83, 89 (1998); *cf. Nw. Airlines, Inc. v. County of Kent*, 510 U.S. 355, 365 (1994) ("The question whether a federal statute creates a claim for relief is not jurisdictional"). If the court was correct that the County could not bring a private cause of action, then defendants were entitled to a judgment on the merits to that effect, not a dismissal without prejudice for lack of jurisdiction.

We lack authority to modify the judgment in defendants' favor, however, because they have not filed a cross appeal and thus cannot enlarge their rights in this court. *See Francis v. Clark Equip. Co.*, 993 F.2d 545, 552-53 (6th Cir. 1993). But the fact that the district court's rationale would have logically dictated a judgment more favorable to defendants does not preclude defendants from relying on that rationale to support the judgment they did receive. *See United States v. Neal*, 93 F.3d 219, 224 (6th Cir. 1996) (noting that a cross appeal is unnecessary so long as the appellee does not seek to modify the judgment in its favor); *see also Conover v. Lein*, 87 F.3d 905, 908-09 (7th Cir. 1996) (affirming dismissal without prejudice after concluding that the dismissal should have been with prejudice); *Arvie v. Broussard*, 42 F.3d 249, 250-51 (5th Cir. 1994) (same). So we turn to the question whether the County can state a private cause of action to recover unpaid taxes.

To support its claim to a cause of action, the County invokes Ky. Rev. Stat. § 446.070, which provides that "[a] person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation[.]" The Kentucky Supreme Court has construed this statute to create a private right of action for the violation of any statute that does not provide its own civil remedy, "so long as the plaintiff belongs to the class intended to be protected by the

statute." *State Farm Mut. Auto. Ins. Co. v. Reeder*, 763 S.W.2d 116, 118 (Ky. 1988). In contrast, if a statute does set out its own remedy, then the "aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). The parties assume, and we agree, that this question is determined based upon the law in effect at the time the lawsuit was filed.

The starting point for the County's argument is that defendants' alleged failure to pay the taxes they owe is a violation of Ky. Rev. Stat. § 91A.080(8), which provides that premium taxes assessed by a local government "shall be due" 30 days after the end of each calendar quarter. Next, the County contends that the administrative-examination procedures set out in § 91A.080(7) did not empower the Office of Insurance to order an insurance company to remit unpaid taxes. The result, the County says, is that the examination procedures did not constitute a civil remedy for the violation of § 91A.080(8) that would displace a private cause of action under § 446.070.

It is true, as the County notes, that the relevant statutes in effect when this case was decided did not expressly empower the Office of Insurance to order an insurance company to remit underpaid taxes. And although the district court thought that § 91A.080 *impliedly* conferred the authority to do so, that conclusion is not free from doubt. There is not a single Kentucky case on point, and the Office of Insurance has not addressed the issue by regulation.

But it is clear to us that the procedures in effect when this case was filed contemplated that the Office of Insurance would determine the amount of taxes (if any) owed by the subject insurance company. *See* Ky. Rev. Stat. § 91A.080(7)(c) (authorizing the Office of Insurance to impose a penalty fee on an insurance company found to have willfully failed to remit insurance taxes, in an amount up to ten percent of "the additional license fees or taxes *determined to be owed*" (emphasis

added)). And once the amount of unpaid taxes was determined, an insurance company's refusal to pay would surely constitute a "[w]illful failure to properly . . . remit" the taxes owed, which would in turn provide grounds for revoking the insurer's license to do business. *Id.* § 91A.080(7)(b). With that heavy cudgel in hand, it is hard to believe that the Office of Insurance could not cause an insurance company to pay what it owes. As a practical matter, therefore, the administrative-examination procedures afforded the County with a civil remedy sufficient to overcome the default presumption that a private cause of action would lie under § 446.070.

The County disagrees. It cites its past experiences with the Office of Insurance, which it claims show that the administrative-examination procedures were not an effective remedy. In one case, the County says, it requested an audit from the Office, but the subject insurer's records were in such disarray that the Office could not review them effectively. As a result, the conclusion of the Office's examination report merely "recommended" that the subject insurer review its records and amend its tax reports as necessary. Although the report added that "necessary corrections shall be made," it did not determine the amount of taxes owed or order the subject insurer to pay anything. In addition, the County notes that in 2005 the Office refused its request for a full examination of all the insurers doing business within the County. The Office instead limited the examination to five insurers, citing manpower concerns.

The basic answer to the County's argument is that a civil remedy need not be perfect in order to displace a private cause of action under § 446.070. As noted above, when the same statute making conduct illegal also sets out a remedy for the violation, the "aggrieved party is limited to the remedy provided by the statute." *Grzyb*, 700 S.W.2d at 401. The statute here provides a civil remedy, and

that is enough. Moreover, it does not appear that the County was without recourse when it ran into difficulties with the Office of Insurance. Under Ky. Rev. Stat. § 304.2-310, the Office's executive director is required to hold a hearing upon the written application of any "person aggrieved by any act, threatened act, or failure of the executive director to act, or by any report, administrative regulation, or order of the executive director[.]" *Id.* § 304.2-310(2)(b). Such hearings are governed by Kentucky's general rules for administrative adjudication, *see id.* § 304.2-310(4), which ultimately subject the agency's decision to judicial review. *See id.* § 13B.140(1).

One final point: Our decision in this case does not turn on the recent amendments to Kentucky's insurance-tax regime, the import of which the parties have vigorously disputed. The County emphasizes that the provisions now expressly make an administrative audit the "sole and exclusive method" for challenging underpaid taxes, Ky. Rev. Stat. § 91A.0804(1), and it contends that this change would have been unnecessary if the administrative process had already been exclusive. Defendants, for their part, argue that the Kentucky legislature's swift action in responding to the *Kendrick* decision confirms that it intended the administrative-review procedures to be exclusive all along. This seems to us a pretty intractable debate, with the two competing inferences effectively cancelling each other out. The better approach is to focus on the provisions actually at issue here. We have done so, and conclude that the administrative-examination procedures were the County's exclusive remedy.

The district court's judgment is affirmed.