*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 10a0232p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

—————————————

TRAVERSE BAY AREA INTERMEDIATE
SCHOOL DISTRICT; TRAVERSE CITY AREA
PUBLIC SCHOOLS,

                *Plaintiffs-Appellants,*

          *v.*

MICHIGAN DEPARTMENT OF EDUCATION;
MICHIGAN DEPARTMENT OF LABOR AND
ECONOMIC GROWTH; MICHIGAN STATE
OFFICE OF ADMINISTRATIVE HEARINGS AND
RULES; S.G., on behalf of her minor child,
S.G,

                *Defendants-Appellees.*

No. 08-1228

—————————————

Appeal from the United States District Court
for the Western District of Michigan at Lansing.
No. 06-00139—Gordon J. Quist, District Judge.

Argued: April 27, 2010

Decided and Filed: August 4, 2010

Before: SUHRHEINRICH, McKEAGUE, and GRIFFIN, Circuit Judges.

—————————————

**COUNSEL**

**ARGUED:** Jeffrey J. Butler, LaPOINTE & BUTLER, P.C., Okemos, Michigan, for
Appellants. Timothy J. Haynes, OFFICE OF THE MICHIGAN ATTORNEY GENERAL,
Lansing, Michigan, for Appellees. **ON BRIEF:** Jeffrey J. Butler, LaPOINTE & BUTLER,
P.C., Okemos, Michigan, for Appellants. Timothy J. Haynes, OFFICE OF THE
MICHIGAN ATTORNEY GENERAL, Lansing, Michigan, for Appellees.

———————————

**OPINION**

———————————

GRIFFIN, Circuit Judge.  Plaintiffs Traverse Bay Area Intermediate School District and Traverse City Area Public Schools (collectively "School Districts") appeal the district court's order dismissing their amended complaint against defendants Michigan Department of Education ("MDE"), Michigan Department of Labor and Economic Growth ("DLEG"), and Michigan State Office of Administrative Hearings and Rules ("SOAHR") (collectively "State Defendants"), for their alleged failure to maintain procedural due process protections in accordance with the Individuals with Disabilities in Education Act, 20 U.S.C. § 1400 *et seq.* ("IDEA").  This appeal presents an issue of first impression in our circuit:  whether plaintiffs, as local educational agencies, have statutory standing under 20 U.S.C. § 1415(i)(2)(A) to challenge a state agency's compliance with certain "procedural safeguards" set forth in 20 U.S.C. § 1415(b).  For the reasons explained below, we hold that the IDEA does not provide School Districts with an express or implied right to compel State Defendants' compliance with § 1415(b)'s procedural safeguards, absent an underlying claim that directly involves a disabled child's individual educational program.

I.

A.

In exchange for federal funding, the IDEA requires states to identify, locate, and evaluate "[a]ll children with disabilities residing in the State . . . who are in need of special education and related services . . . ."  20 U.S.C. § 1412(a)(3)(A).  A recipient state is required to provide a free appropriate public education ("FAPE") for any such disabled child.  20 U.S.C. § 1412 (a)(1)(A).  The state's local educational agencies – typically, the local school district – must create an individual educational program ("IEP") addressing each disabled child's special needs.  20 U.S.C. § 1414(b)-(d).  In addition to these substantive obligations, all participating states and local educational agencies are required to "establish and maintain" certain "procedural safeguards" to ensure that all disabled children receive a

FAPE. 20 U.S.C. § 1415(a); *see Keene v. Zelman,* 337 F. App'x 553, 554 (6th Cir. 2009) (unpublished) (discussing IDEA procedural due process protections).

The IDEA provides a hearing process through which parents who disagree with the appropriateness of their child's IEP may seek relief. Specifically, 20 U.S.C. § 1415(a) provides:

> Establishment of procedures:
>
> Any State educational agency, State agency, or local educational agency that receives assistance under this subchapter shall establish and maintain procedures in accordance with this section to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies.

*Id.*

Parents may challenge an IEP by filing a complaint against the local educational agency and demanding a due process hearing, at which time they are given an opportunity to voice their concerns to an independent hearing officer ("IHO"). 20 U.S.C. §§ 1415(b)(6) and (f)(1)-(3). At the conclusion of the hearing, the IHO must decide whether the IEP satisfies or impedes the child's right to a FAPE. 20 U.S.C. § 1415(f)(3)(E). Either party may appeal the IHO's decision to a state level review officer ("SLRO"). 20 U.S.C. § 1415(g)(1)-(2). Finally, any party aggrieved by the SLRO's decision may bring a civil action in state or federal court. 20 U.S.C. § 1415(i)(2)(A).

This litigation began when S.G., the parent of a minor child with autism, filed a complaint against School Districts asserting that the IEP did not fully address her child's special needs. *See* 20 U.S.C. § 1415(b)(6). Before the IHO conducted the due process hearing, however, School Districts and S.G. reached a settlement agreement. Nevertheless, a second dispute arose when School Districts opposed S.G.'s motion to incorporate the settlement agreement into the order dismissing S.G.'s complaint.

After considering the matter, the IHO denied S.G.'s motion to incorporate the settlement agreement. S.G. appealed the IHO's ruling to a SLRO pursuant to 20 U.S.C. § 1415(g). The SLRO agreed with S.G. and ordered the incorporation of the parties'

settlement agreement into the order of dismissal.  School Districts, aggrieved by this ruling, appealed the SLRO's administrative decision to the United States District Court for the Western District of Michigan pursuant to 20 U.S.C. § 1415(i)(2)(A).

B.

On September 26, 2006, School Districts filed a four-count complaint against S.G. and State Defendants seeking declaratory, injunctive, monetary, and equitable relief.  Counts I and II alleged breaches of contract against S.G., and Counts III and IV alleged, *inter alia*, that State Defendants unlawfully exercised jurisdiction over S.G.'s administrative appeal. Essentially, School Districts asserted that State Defendants had no authority to adjudicate S.G.'s appeal pursuant to § 1415(g) because all contested IEP issues were resolved.  S.G. and State Defendants moved to dismiss School Districts' complaint.

While the motions to dismiss were pending, the district court permitted School Districts to file an amended complaint.  The proposed amended complaint contained the original Counts I - III, as well as a modified Count IV and a new Count V, which, like Count IV of the original complaint, alleged that State Defendants violated the IDEA when they exercised jurisdiction over S.G.'s administrative appeal.  Importantly, Count V also asserted that State Defendants were in violation of § 1415(b) because they were neglecting their "ongoing obligation" to "monitor and enforce the [IDEA's] procedural safeguards" and their duty to supervise "SOAHR's implementation of the due process hearing system in Michigan."

On July 27, 2007, the district court granted State Defendants' motion to dismiss in toto and S.G.'s motion to dismiss in part, permitting only Count IV to "proceed . . . against Defendant S.G. [] as an action pursuant to 20 U.S.C. § 1415 for review of [the IHO's] decision."  School Districts appealed the district court's July 27, 2007, order in February 2008.  Based upon a joint motion filed by S.G. and School Districts, we remanded that portion of School Districts' appeal that challenged the dismissal of Counts I and II of the amended complaint and certain orders regarding attorneys' fees.

In May 2009, the district court accepted S.G.'s and School Districts' stipulation to dismiss all pending claims between them with prejudice.  Thus, the operative notice of

appeal concerns only the district court's July 27, 2007, order granting State Defendants' motion to dismiss Counts III -V of the amended complaint.  School Districts timely appeal that order.

## II.

As a preliminary matter, although School Districts present three questions for our review, we may resolve their appeal by answering one question:  whether plaintiffs, as local educational agencies, possess a private right pursuant to 20 U.S.C. § 1415(i)(2)(A) to challenge a state agency's compliance with certain "procedural safeguards" set forth in § 1415(b) of the IDEA?[1]  We hold that they do not.

We review de novo the district court's grant of State Defendants' motion to dismiss for lack of statutory standing under Fed. R. Civ. P. 12(b)(6).  *See Bridges v. Am. Elec. Power Co.,* 498 F.3d 442, 444-45 and n.1 (6th Cir. 2007); *cf. Franklin County v. Travelers Prop. Cas. Ins. Co. of Am.*, No. 09-5118, 2010 WL 841185, at *2 (6th Cir. Mar. 11, 2010); *Harzewski v. Guidant Corp.,* 489 F.3d 799, 803 (7th Cir. 2007) ("But there is also a nonconstitutional doctrine of standing to sue, one aspect of which is the requirement that the plaintiff be within the "zone of interests" of the statute or other source of rights under which he is suing.") (citing *Air Courier Conference of Am. v. Am. Postal Workers Union*, 498 U.S. 517, 523-26 (1991)).  It is well-established that State Defendants bear the burden of proving that School Districts' claim failed as a matter of law.  *First Am. Title Co. v. Devaugh*, 480 F.3d 438, 443-44 (6th Cir. 2007).  To survive a motion to dismiss, School Districts must allege "enough facts to state a claim to relief

---

[1]School Districts' appellate brief presents three questions for our review:  (1) "Does an LEA that is aggrieved by an SEA decision under Section 1415 of IDEA have a private right of action against the SEA where the SEA fails to properly implement its due process hearing system?"; (2) "Do the LEAs have standing under Section 1415 of IDEA to enforce an Interagency Agreement that implements the procedural safeguards provision of IDEA and defines the duties and procedures for agencies conducting a due process hearing to which the LEAs were a party?"; and (3) Does the Eleventh Amendment bar the LEAs' claims against the SEA in this case?"  These questions, however, are relevant only to whether the district court properly dismissed Count V.  Thus, School Districts have forfeited any right to challenge the district court's dismissal of Counts III and IV.  *See United States v. Johnson*, 440 F.3d 832, 845-46 (6th Cir. 2006) ("[A]n appellant abandons all issues not raised and argued in its initial brief on appeal[.]") (internal quotation marks and citations omitted).

that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Bennett v. MIS Corp.,* 607 F.3d 1076, 1091 (6th Cir. 2010).

As the Supreme Court explained in *Alexander v. Sandoval*, 532 U.S. 275 (2001):

[P]rivate rights of action to enforce federal law must be created by Congress.  The judicial task is to interpret the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.  Statutory intent on this latter point is determinative.  Without it, a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute.  Raising up causes of action where a statute has not created them may be a proper function for common-law courts, but not for federal tribunals.

*Id.* at 286-87 (internal quotation marks and citations omitted).

In accordance with these principles, we must first examine the statutory language to determine whether the IDEA creates an express right for a local educational agency to maintain a civil action against a state educational agency for its failure to comply with § 1415(b).  If no express right exists in the statutory text, we must then determine whether the IDEA creates an implied right of action.

A.

The text of the IDEA does not contain language that expressly authorizes a local educational agency to bring an action against a state educational agency for its alleged non-compliance with § 1415(b)'s procedural safeguards.  Nonetheless, School Districts argue that they qualify as an "aggrieved party" under § 1415(i)(2)(A) and thus their right to sue is express.  We disagree.

Section 1415(i)(2)(A) states:

(2) Right to bring civil action

(A) In general

Any party aggrieved by the findings and decision made under subsection (f) or (k) who does not have the right to

>an appeal under subsection (g), and any party aggrieved
>by the findings and decision made under this subsection,
>shall have the right to bring a civil action with respect to
>the complaint presented pursuant to this section, which
>action may be brought in any State court of competent
>jurisdiction or in a district court of the United States,
>without regard to the amount in controversy.

*Id.*

An express right to sue is created by the text of a statute. "An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 283 (7th Cir. 2009). Section 1415(i)(2)(A) states that an aggrieved party shall have the right to sue "with respect to the complaint presented pursuant to [20 U.S.C. § 1415(b)]." Section 1415(b)(6)(A) provides "[a]n opportunity for any party to present a complaint . . . *with respect to any matter relating to the identification, evaluation, or educational placement of the child*, or the provision of a free appropriate public education *to such child*." *Id.* (emphasis added).

Sections 1415(f)(1)(A) and (f)(1)(B)(i)(IV) state, "[w]henever a complaint has been received under subsection (b)(6) or (k),[2] the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing" preceded by a preliminary meeting "where the parents of the child discuss their complaint, and the facts that form the basis of the complaint, and the local educational agency is provided the opportunity to resolve the complaint." *Id.* After a final administrative decision, "[a]ny party aggrieved by the findings and decisions made under subsections (f)[3] or (k) who does not have a right to appeal under subsection (g)[4] and any

---

[2]20 U.S.C. § 1415(k) provides authority for school personnel to remove a disabled child "who violates a code of student conduct."

[3]20 U.S.C. § 1415(f), as quoted above, discusses the parameters and requirements for the due process hearing. The right to a due process hearing is triggered upon the filing of a due process complaint.

[4]20 U.S.C. § 1415(g) provides the appeal procedures for those states that have a two-tiered administrative due process system.

party aggrieved by the findings and decision made under this subsection, shall have the right to bring a civil action *with respect to the complaint presented pursuant to this section . . . .* " 20 U.S.C. § 1415(i)(2)(A) (emphasis added).

Based on the plain language of the statute, we conclude that School Districts are not an "aggrieved party" under § 1415(i)(2)(A) because Count V does not involve a "complaint" that "relat[es] to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child." 20 U.S.C. § 1415(b)(6)(A).

B.

Because School Districts do not possess an express right to sue pursuant to § 1415(i)(2)(A), we must next analyze whether their right is implied. In *Cort v. Ash,* 422 U.S. 66 (1975), the Supreme Court established a four-factor test to determine whether a federal statute creates an implied right to sue: (1) whether the statute was enacted to benefit a special class; (2) whether the drafters intended to create a private right to sue; (3) whether a private right to sue would be consistent with the purposes of the statute; and (4) whether the right to sue is one not traditionally relegated to the states. *Id.* at 78 (implicitly refined by *Bowling Green v. Martin Land Development Co.*, 561 F.3d 556, 559 (6th Cir. 2009) ("subsequent [Supreme Court] decisions have made clear that congressional intent is the 'determinative factor.'"). The Supreme Court thereafter instructed that the second factor – Congressional intent – is "dispositive." *Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23-24 (1979); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,* 456 U.S. 353, 377-78 (1982) ("Our cases subsequent to [] *Ash* have plainly stated that our focus must be on the intent of Congress. The key to the inquiry is the intent of the Legislature.") (internal quotation marks, citations, and footnote omitted). In the present case, the burden of demonstrating Congressional intent is on School Districts. *Suter v. Artist M.,* 503 U.S. 347, 363-64 (1992) ("[T]he burden is on respondents to demonstrate that Congress intended to make a private remedy available[.]").

Congress expressly provided a private right to sue in favor of any party aggrieved by a decision under 20 U.S.C. § 1415(b), which, as articulated above, involves any matter "relating to the identification, evaluation, or educational placement of the [disabled] child."  20 U.S.C. § 1415(b)(6)(A).  Section 1415, entitled "Procedural Safeguards[,]" states that procedures shall be established and maintained "to ensure *that children with disabilities and their parents* are guaranteed procedural safeguards with respect to the provision of a free appropriate public education by such agencies." 20 U.S.C. § 1415(a) (emphasis added).  Likewise, 20 U.S.C. § 1412(a)(6), also entitled "Procedural Safeguards," states that "[c]hildren *with disabilities and their parents* are afforded the procedural safeguards required by section 1415 of this title." *Id.*  Thus, sections 1412 and 1415 of the IDEA explain that § 1415(b)'s procedural safeguards, which include the right to file a lawsuit under § 1415(i)(2)(A), are designed to benefit disabled children and their parents.  Simply put, the procedural safeguards articulated in § 1415 were enacted so that parents with disabled children could enforce their child's right to a FAPE.  "[W]hen Congress created the federal right to a FAPE it vested the right in children with disabilities and gave the parents procedural devices to enforce their child's rights.  This structure simply does not, at the same time, create a federal right in a [local educational agency]." *Rancocas Valley Reg'l High School Bd. of Educ. v. M.R.*, 380 F. Supp. 2d 490, 495 (D.N.J. 2005).  It is plain from the language of § 1415(a) that these procedural safeguards are in place to protect the disabled child.

We conclude that the IDEA's procedural safeguards were enacted to resolve disputes regarding the sufficiency of a disabled child's IEP.  In this regard, a local educational agency has the right to challenge a provision of a disabled child's IEP, including its right to appeal an unfavorable state agency administrative decision, but only if that decision directly involves a disabled child's right to a FAPE.

Count V of School Districts' amended complaint sought to compel State Defendants' compliance with their statutory duties under § 1415(b) of the IDEA.  This claim is not consistent with the express purpose of § 1415(b), which is to "ensure that *children with disabilities and their parents* are guaranteed procedural safeguards . . . .

" 20 U.S.C. § 1415(a) (emphasis added).  As the Second Circuit stated in *County of Westchester v. New York,* 286 F.3d 150 (2d Cir. 2002):

> Since Congress expressly provided a private right of action in favor of certain groups, specifically, any party aggrieved by particular findings or a decision rendered under subsection 1415, see 20 U.S.C. § 1415(i)(2)(A), but did not expressly provide a private right of action in favor of a county, educational agency or any other entity seeking to challenge the lack of an interagency agreement required by § 1412(12), we find it extremely unlikely that Congress intended to do so.  *See Transamerica*, 444 U.S. at 20, 100 S. Ct. 242 ("In view of these express provisions for enforcing the duties imposed . . . , it is highly improbable that Congress absentmindedly forgot to mention an intended private action.") (internal quotation marks omitted); *National R.R. Passenger Corp. v. National Ass'n of R.R. Passengers*, 414 U.S. 453, 458, 94 S. Ct. 690, 38 L. Ed. 2d 646 (1974) ("[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies.").

> The fact that Congress delegated regulatory and enforcement authority to the Secretary of Education also weighs heavily against implying a private right of action. The Secretary is primarily responsible for the interpretation and implementation of the IDEA and has been granted regulatory and enforcement powers.  *See* 20 U.S.C. § 1417 (delegating regulatory authority to Secretary); *id.* § 1416 (authorizing withholding of funds and reference to the Department of Justice for enforcement action); 34 C.F.R. §§ 300.580 to .587.  As we recently stated in *Conboy v. AT & T Corp.*, granting broad powers to a federal agency "would be inconsistent with [implying] a private right of action because private litigation tends to transfer regulatory interpretation and discretion from the agency to the courts."  241 F.3d 242, 253 (2d Cir. 2001) (citation and internal quotation marks omitted).

> We refuse to imply a private cause of action in the absence of clear congressional intent and in the face of an express allocation of enforcement authority to (1) those aggrieved in section 1415 proceedings and (2) the Secretary of Education.  We simply cannot "confidently conclude" from the text and legislative history of the IDEA that Congress intended to create a private right of action in favor of [school districts]. *Collinsgru v. Palmyra Bd. of Educ.*, 161 F.3d 225, 233 (3d Cir. 1998). Therefore, we hold that the Counties failed to satisfy their burden of demonstrating that Congress intended to provide them with a private right of action to pursue their claims against the State.

*Id.* at 152-53.

We agree with the reasoning of the Second Circuit in *County of Westchester*. Because Congress specifically delegated regulatory and enforcement authority to the Secretary of Education, 20 U.S.C. § 1417, it would be problematic to allow local educational agencies to maintain lawsuits against state educational agencies for their alleged non-compliance with the IDEA's procedural safeguards. Our analysis "comports with the long-established canon of statutory construction, *expressio unius est exclusio alterius*, 'the mention of one thing implies the exclusion of another.'" *Devaugh*, 480 F.3d at 453; *see also Millsaps v. Thompson*, 259 F.3d 535, 546-47 (6th Cir. 2001) ("Under the *expressio unius* principle, '[w]hen a statute limits a thing to be done in a particular mode, it includes the negative of any other mode.'") (quoting *Nat'l R.R. Passenger Corp.,* 414 U.S. at 458)). Congress has expressly delegated regulatory and enforcement authority to the Secretary of Education; thus, it is logical to conclude that it did so at the exclusion of local educational agencies.

Moreover, the Third, Seventh, and Eleventh Circuits have held that local educational agencies do not possess a private right to enforce a state agency's compliance with the IDEA's statutory provisions. *See Lawrence Twp. Bd. of Educ. v. New Jersey*, 417 F.3d 368, 371 (3d Cir. 2005) (holding that the IDEA authorizes a private right to sue in favor of certain groups, but does not expressly or impliedly provide such a right in favor of a county, educational agency, or any other entity); *Bd. of Educ. of Oak Park & River Forest High Sch. Dist. No. 200 v. Kelly E.*, 207 F.3d 931, 935-36 (7th Cir. 2000) (holding § 1415(i) does not authorize an award of financial relief in favor of a local educational agency); *Andrews v. Ledbetter*, 880 F.2d 1287, 1290-91 (11th Cir. 1989) ("Congress did not grant [local educational agencies] the right to bring an action to ensure that the [IDEA's] mandates are carried out.").

III.

For these reasons, we hold that the IDEA does not provide School Districts with an express or implied right to compel State Defendants' compliance with § 1415(b)'s procedural safeguards absent an underlying claim that directly involves a disabled child's IEP.[5]

Affirmed.

---

[5]Because School Districts have not met their burden in demonstrating a private right to sue, our holding is sufficient to affirm the district court's order. *Suter,* 503 U.S. at 363-64. Thus, we need not address the other issues. *See Wedgewood Ltd. Partnership I v. Twp. of Liberty,* No. 08-4446, 2010 WL 2583410, at *12 n.9 (6th Cir. June 28, 2010) (reaffirming that federal courts should avoid deciding unnecessary constitutional questions).