# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Decided June 16, 2017

No. 16-5276

JIM LEE,
APPELLANT

v.

UNITED STATES AGENCY FOR INTERNATIONAL DEVELOPMENT
AND NATIONAL OCEANIC AND ATMOSPHERIC
ADMINISTRATION,
APPELLEES

———

On Motion for Summary Affirmance

———

Appeal from the United States District Court
for the District of Columbia
(No. 1:15-cv-02102)

———

*Rhonda L. Campbell* and *R. Craig Lawrence*, Assistant U.S. Attorneys, were on the motion for summary affirmance.

*Jim Lee*, pro se, was on the response for appellant.

Before: ROGERS, KAVANAUGH, and MILLETT, *Circuit Judges.*

PER CURIAM: Jim Lee, proceeding *pro se*, appeals the grant of the motion for judgment on the pleadings to the United States Agency for International Development ("USAID") and the National Oceanic and Atmospheric Administration ("NOAA") (together "the agencies"). Lee contends that the agencies violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, by terminating his employment because of his national origin. He also contends that NOAA violated 18 U.S.C. § 1001, which criminalizes false statements to the government, by lying about why he was terminated.

The only aspect of his appeal that merits extended discussion is whether 18 U.S.C. § 1001 creates a private right of action. We hold it does not.

**I.**

According to the complaint, Lee was employed by a federal contracting firm and worked at USAID from 2008 until he was fired in 2013. Lee alleges that USAID terminated his employment after the Department of Defense denied his application for a security clearance in 2012, and that he was denied a clearance because he and his family are from China.

In July 2013, Lee began working for NOAA. As with his previous position, he was employed directly by a federal contracting firm, SSAI. On April 30, 2014, Lee was fired.

Lee contacted several people at the Department of Defense, NOAA, and SSAI to determine why his employment was terminated. Believing he was fired because of his national origin, Lee alleges he called the Equal Employment Opportunity Commission ("EEOC") around the end of May or beginning of June to make a complaint against NOAA. An EEOC representative purportedly told Lee that he would have to sue

SSAI, which in turn, would sue NOAA.  Several months later, Lee contacted NOAA's Equal Employment Opportunity ("EEO") office and began communicating with an EEO counselor.  Lee alleges that during the counselor's investigation of his claims, a NOAA official told her that SSAI, not NOAA, decided to fire Lee.  The counselor emailed Lee to inform him of this information, specifying that SSAI contacted NOAA and told the agency to stop processing Lee's paperwork because SSAI decided to take him off the NOAA contract.  Lee alleges that when he contacted an SSAI manager and told him what the EEO counselor had said, the manager told him that "was absolutely not true."

Lee filed with the EEOC an employment discrimination complaint against SSAI.  When the EEOC dismissed his complaint, he sued USAID and NOAA in the district court, seeking damages and an injunction against further discrimination and retaliation.  He alleges that NOAA and USAID violated Title VII by terminating his employment because of his national origin and that NOAA violated 18 U.S.C. § 1001 by falsely stating during the EEO investigation that SSAI, rather than NOAA, fired him.  The district court granted the agencies' motion for judgment on the pleadings and dismissed the complaint with prejudice, ruling that Lee does not have a Title VII claim against the federal government because he was a federal contractor, not a federal employee, and in any event, Lee failed to timely exhaust his administrative remedies.  The district court also ruled that 18 U.S.C. § 1001 does not provide a private right of action.  Lee appeals the dismissal of his complaint, and the agencies move for summary affirmance.

**II.**

On appeal, Lee offers no legal support to show that Section 1001 provides a private cause of action.  Because this is

a recurring issue and there are no published decisions by the Court, we address it here and conclude for the following reasons that it does not.

Section 1001 provides, with exceptions not applicable here:

> (a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully –
>
>> (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
>>
>> (2) makes any materially false, fictitious, or fraudulent statement or representation; or
>>
>> (3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;
>
> shall be fined under this title, imprisoned not more than 5 years, or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

18 U.S.C. § 1001.[1]

---

[1] The remainder of Section 1001 provides:

> (b) Subsection (a) does not apply to a party to a

5

Congress creates federal rights of action to enforce federal laws. *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001). Such causes of action may be created explicitly or implicitly. The touchstone is always Congress's intent. *Id*. An explicit right to sue is created by the text of the statute. "An express federal cause of action states, in so many words, that the law permits a claimant to bring a claim in federal court." *Traverse Bay Area Intermediate School Dist. v. Michigan Dep't of Educ.*, 615 F.3d 622, 627–28 (6th Cir. 2010) (quoting *Int'l Union of Operating Eng'rs, Local 150, AFL-CIO v. Ward*, 563 F.3d 276, 283 (7th Cir. 2009)). Section 1001 does not expressly grant an individual cause of action to private persons alleging that they were harmed

judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to –

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or

(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

by violations of the statute. The question therefore becomes whether the statute implies a private cause of action.

Determining whether Congress intended to create an implied cause of action begins with the text and structure of the statute. *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979). The Supreme Court has "rarely implied a private right of action under a criminal statute," *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979), and nothing in the text of 18 U.S.C. § 1001 suggests Congress intended otherwise. Although the express "provision of a criminal penalty does not necessarily *preclude* implication of a private cause of action for damages," such a provision in a "bare criminal statute," with no other statutory basis for inferring that a civil cause of action exists, is insufficient to imply Congress intended to create a concomitant civil remedy. *Cort v. Ash*, 422 U.S. 66, 79–80 (1975); *see also Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190 (1994). Nor does the structure of Section 1001 imply a private cause of action inasmuch as it is part of the criminal code.

And looking beyond the "bare criminal statute," the legislative history of Section 1001 supports our conclusion. Section 1001 is a Civil War statute that was enacted to protect against "bilk[ing] the Government out of money or property." *Hubbard v. United States*, 514 U.S. 695, 706 (1995). When amended in 1934, Congress broadened the purpose of Section 1001 "to aid the enforcement of laws" and to protect "federal agencies from the variety of deceptive practices plaguing the New Deal administration." *Id*. at 707. Then, in 1996, after the Supreme Court in *Hubbard* narrowly interpreted the scope of the statute to exclude making false statements to the legislative and judicial branches, Congress amended Section 1001 to clarify that it criminalizes making knowing, willful, material false statements not only to the executive branch, but also — with

certain limitations — to the legislative and judicial branches. 142 Cong. Rec. S11605-02 (1996) (statement of Sen. Levin). Neither the 1996 amendments nor subsequent amendments in 2004 and 2006, which established longer maximum prison terms for violations involving terrorism and certain sexual offenses, indicate that Congress intended to create a private cause of action under Section 1001. Moreover, Section 1001 was originally enacted in the same bill as the precursor to the False Claims Act, 31 U.S.C. §§ 3729 *et seq.*, which does provide for an express cause of action, *id.* § 3730(b). *See* Act of Mar. 2, 1863, ch. 67, 12 Stat. 696 (1863). The 1934 amendment to Section 1001 "sever[ed] the historical link with the false claims portion of the statute." *Hubbard*, 514 U.S. at 706. That Congress did not then carry over an express cause of action for false statements, while leaving one in place elsewhere for false claims, further belies any intent to create an implied cause of action under Section 1001. *See Touche Ross & Co.*, 442 U.S. at 571–72.

Accordingly, we affirm the dismissal of Lee's claim under 18 U.S.C. § 1001 because the statute does not create a private cause of action.

### III.

Lee's remaining contentions lack merit and we affirm, with one modification of the order of dismissal. Lee contends that he was unlawfully terminated from USAID and NOAA because of national origin discrimination in violation of Title VII. Taking the allegations of the complaint as true, as we must, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), it is unclear whether he was a federal employee within the meaning of Title VII. *See Al-Saffy v. Vilsack*, 827 F.3d 85, 96 (D.C. Cir. 2016) (citing *Spirides v. Reinhardt*, 613 F.2d 826, 831–32 (D.C. Cir. 1979)). But even if Lee were a federal employee, he failed to exhaust his

administrative remedies.  *See Payne v. Salazar*, 619 F.3d 56, 65 (D.C. Cir. 2010); *Park v. Howard Univ.*, 71 F.3d 904, 907 (D.C. Cir. 1995).  Although Lee filed an EEOC complaint regarding his termination from NOAA, that complaint was dismissed and did not effectively exhaust his administrative remedies because, as Lee acknowledges, Compl. ¶ 30, it asserted claims only against SSAI rather than the defendant in this action, NOAA.

On the facts as alleged, however, if tolling applies, *see* 29 C.F.R. § 1614.105(a)(2), Lee might be able to refile his administrative complaint and timely exhaust his administrative remedies against NOAA. *Harris v. Gonzales*, 488 F.3d 442, 444 (D.C. Cir. 2007); *see also Currier v. Radio Free Europe/Radio Liberty, Inc.*, 159 F.3d 1363, 1367 (D.C. Cir. 1998).  Therefore, the order of dismissal shall be modified to state that the Title VII claim against NOAA is dismissed without prejudice.  Because Lee concedes that he never attempted to timely exhaust his administrative remedies against USAID, his Title VII claim against USAID shall remain dismissed with prejudice.