NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0453n.06

No. 17-2113

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LAND AND BUILDINGS INVESTMENT MANAGEMENT, LLC, | ) ) ) | **FILED** Aug 30, 2018 DEBORAH S. HUNT, Clerk |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| TAUBMAN CENTERS, INC.; ROBERT S. TAUBMAN; WILLIAM S. TAUBMAN; GAYLE TAUBMAN KALISMAN; R&W-TRG, LLC; TAUBMAN VENTURES GROUP, LLC; TG PARTNERS; TF ASSOCIATES, | ) ) ) ) ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |

Before: BOGGS, CLAY, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. In 2017, Land and Buildings Investment Management, LLC, ("L&B") sought to place two candidates on the Board of Directors of Taubman Centers, Inc. When that effort failed, L&B filed suit against Taubman Centers and others, claiming: (1) that Taubman Centers had violated its Articles of Incorporation by permitting Robert Taubman, William Taubman, and Gayle Taubman Kalisman (collectively, "the Taubman Family") to own stock in excess of the charter's Ownership Limit; and (2) that Taubman Centers had violated Section 14(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78n(a), by filing a materially false and misleading proxy statement. The plain terms of Taubman Centers' charter foreclose L&B's claims, however. We, therefore, affirm the district court's judgment dismissing L&B's complaint for failure to state a claim.

I.

A.

Taubman Centers is a publicly traded Real Estate Investment Trust (REIT) incorporated in Michigan. Its sole asset is its ownership of 71% of the partnership units of the Taubman Realty Group Limited Partnership ("TRG Partnership"), which owns, manages, and leases malls and shopping centers. The remaining 29% of the partnership units are owned by others, including the Taubman Family.

In 1998, Taubman Centers issued Series B Non-Participating Convertible Preferred Stock ("Series B Preferred Stock") to the holders of the partnership units of TRG Partnership, with one share of the stock issued for each partnership unit held. L&B alleges that each share of Series B Preferred Stock is inseparable from the underlying partnership unit, claiming that "[t]he restrictions in the Charter effectively limit the transfer of either security to assure that only holders of the Operating Partnership Units hold Series B Preferred Stock." L&B recounts a statement from Taubman Centers' website explaining that "[t]he operating partnership's unit holders may purchase one share of Series B preferred stock for each operating partnership unit owned" and that "the preferred shares do not trade separately from the operating partnership units but are 'stapled' to the operating partnership units."

Each share of Series B Preferred Stock, like each share of common stock, is entitled to one vote in an election for the Taubman Centers Board of Directors ("the Board"). Additionally, Series B Preferred Stockholders have the right to designate nominees for four of the nine seats on the Board. Unlike common stock, Series B Preferred Stock does not provide a right to dividends or other economic benefits.

Taubman Centers' charter provides that "no Person (other than an Existing Holder) shall Beneficially Own or Constructively Own shares of Capital Stock having an aggregate value in excess of the Ownership Limit," which is defined as "8.23% of the value of the outstanding Capital Stock[.]" "Capital Stock," in turn, is defined as "the Common Stock and the Preferred Stock[.]" It is undisputed that the Taubman Family constitutes a "Person" and is not "an Existing Holder." If a person exceeds the Ownership Limit, the surplus stock must be surrendered. The purported owner of the surplus stock is not entitled to vote such shares.

B.

L&B is a registered investment advisor and a shareholder in Taubman Centers. In April 2017, L&B launched a proxy contest to elect two candidates to the Taubman Centers Board of Directors. Taubman Centers filed a proxy statement with the Securities and Exchange Commission (SEC) on April 20, 2017, which stated that:

> The Series B Preferred Stock is convertible into shares of common stock at a ratio of 14,000 shares of Series B Preferred Stock to one share of common stock, and therefore one share of Series B Preferred Stock has a value of 1/14,000ths of the value of one share of common stock. Accordingly, the foregoing ownership of Voting Stock does not violate the Ownership Limitations set forth in the Articles.

The proxy statement also declared that the Taubman Family was entitled to an approximately 30% voting interest. At Taubman Centers' June 2017 annual meeting, the Taubman Family exercised its voting interest. L&B's nominees to the Board were not elected.[1]

L&B then sued Taubman Centers, the Taubman Family, and four entities owned or controlled by the Taubman Family through which the family owns the Series B Preferred Stock: R&W-TRG, LLC; Taubman Ventures Group, LLC; TG Partners; and TF Associates, LLC. L&B

---

[1] L&B recently informed this court that one of its nominees has since been elected to the Board.

claimed that Taubman Centers had violated its Articles of Incorporation by allowing the Taubman Family to own and vote stock in excess of the Ownership Limit and had violated Section 14(a) of the Securities Exchange Act by filing a materially false proxy statement. Both of L&B's arguments relied on its allegation that the true value of Series B Preferred Stock must reflect the stock's connection to the underlying partnership units of TRG Partnership.

The defendants moved to dismiss the action for failure to state a claim upon which relief could be granted, arguing that the charter expressly states that the Board determines the value of Series B Preferred Stock and that the determination is final and binding. The district court agreed with the defendants, finding that the Board had assigned "nominal value" to the Series B Preferred Stock and that "the charter itself establishes that the liquidation value of Series B preferred stock is $.001 per share and that Series B stock is convertible [to common stock] at a ratio of 14,000 to 1." *Land & Bldgs. Inv. Mgmt., LLC v. Taubman Ctrs., Inc.*, No. 17-11576, 2017 WL 3499900, *4 (E.D. Mich. Aug. 16, 2017). As to L&B's Section 14(a) claim, the district court held that Taubman Centers was "not required to adopt or disclose Plaintiff's legal theory about the correct valuation of Series B stock." The district court accordingly granted the defendants' motion and dismissed L&B's complaint for failure to state a claim. L&B brought this timely appeal.

II.

We review de novo a district court's decision to grant a motion to dismiss for failure to state a claim. *Erie Cty. v. Morton Salt, Inc.*, 702 F.3d 860, 867 (6th Cir. 2012). "To survive a motion to dismiss, [the plaintiff] must allege 'enough facts to state a claim to relief that is plausible on its face.'" *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "When determining facial plausibility, the court must construe the complaint in the light most favorable

to the plaintiff." *Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 387 (6th Cir. 2013) (citation omitted). A reviewing court must "accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." *Hall v. Callahan*, 727 F.3d 450, 453 (6th Cir. 2013) (quoting *Ziegler v. IBP Hog Market, Inc.*, 249 F.3d 509, 511–12 (6th Cir. 2001)). "Assessment of the facial sufficiency of the complaint must ordinarily be undertaken without resort to matters outside the pleadings"; otherwise, the motion to dismiss must be treated as a motion for summary judgment. *Rondigo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680 (6th Cir. 2011) (citation omitted). "However, a court may consider 'exhibits attached [to the complaint], public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein' . . . ." *Id.* at 680–81 (alteration in original) (quoting *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008)).

### A.

L&B first claims breach of contract based on Taubman Centers' alleged violations of its Articles of Incorporation. L&B claims that Taubman Centers violated its Articles by permitting the Taubman Family to own stock in excess of the Ownership Limit and to vote that surplus stock at the 2017 annual meeting. In support, L&B argues that the family's shares of Series B Preferred Stock, if properly valued, would have caused the aggregate value of the family's stock to exceed the Ownership Limit.

The Articles of Incorporation, however, assign the Series B Preferred Stock specific value. When determining whether a person owns stock in excess of the Ownership Limit, the Articles state that:

> the total value of the outstanding Capital Stock shall be allocated among the different classes and series according to the relative value of each class or series, as determined by reference to the Market Price per share of each such class or series, using the date on which the Transfer occurs as the relevant date, or the effective date of the change in capital structure as the relevant date, as appropriate.

For stock that is not traded, like the Series B Preferred Stock, "Market Price" is defined as "the market price of such class or series of shares on the relevant date as determined in good faith by the Board of Directors of the Corporation." For Series B Preferred Stock, the Articles provide even more guidance, stating that:

> The Series B Preferred Stock is convertible, and will be automatically converted under the circumstances described below, into Common Stock at a conversion ratio of 14,000:1; i.e., each 14,000 shares of Series B Preferred Stock may be converted into one share of Common Stock.

The charter itself thus adopts a valuation formula for Series B Preferred Stock pursuant to which the market price of Series B Preferred Stock is 1/14,000th the market price of common stock.

Nevertheless, L&B argues, the charter requires the *Board* to determine the market price of the stock. Yet L&B's complaint does not allege that the Board failed to determine the value of the Series B Preferred Stock. L&B argues that the fact that it did not allege that there *was* a determination is dispositive. The opposite is true. A plaintiff must allege facts to make its claim, and L&B failed to allege that the Board did not make a determination. Additionally, the Taubman Centers' proxy statement outlined the 14,000:1 formula. L&B argues that the proxy statement was only a "corporate statement" not attributable to the Board. But in its complaint, L&B acknowledged that the proxy statement reflected the views of the Board, stating that:

> Plaintiff's efforts to reverse [Taubman Centers'] historical stock price were stymied at the Annual Meeting because [Taubman Centers] and its Board continued to permit the Taubman Family to breach the Ownership Limit set forth in the Company's Charter. Put simply, the Taubman Family was permitted to control more than 30 percent of the shareholder vote resulting in Plaintiff needing an artificially high number of votes to effect change at the Company. *The [Taubman Centers] Board touted this alleged advantage in its proxy materials, causing further harm to Plaintiff.*

(Emphasis added.) L&B's complaint, then, not only fails to allege that there was no Board determination, it affirmatively attributed the proxy statement to the Board.[2]

Next, L&B argues that any Board determination was not made "in good faith," as the Articles require, because using the 14,000:1 formula substantially undervalues the true worth of Series B Preferred Stock.[3] Noting that the Ownership Limit was designed to ensure that Taubman Centers could pass the "5/50 Test" for REITs, L&B argues that this formula places Taubman

---

[2] Because L&B itself attributed the proxy statement to the Board, we need not address whether the proxy statement is attributable to the Board by virtue of its ending with the phrase "By Order of the Board of Directors," a fact not alleged by L&B in its complaint. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 467 (6th Cir. 2014) (noting that we may only take judicial notice "of the fact that [the corporation] filed [an SEC filing] and what that filing said, but we c[an]not consider the statements contained in the document for the truth of the matter asserted, even at the motion-to-dismiss stage" (citations omitted)).

L&B argues that there is no "proof as to what the Board's records actually show" nor is there evidence that the Board properly voted on a "resolution," but we need not turn a blind eye to L&B's own statement attributing the proxy statement to the Board. *See United States ex rel. Sheldon v. Kettering Health Network*, 816 F.3d 399, 409 (6th Cir. 2016) (noting that, when evaluating a Rule 12(b)(6) motion, "the court need not accept legal conclusions or unwarranted factual inferences" (quotation marks and citation omitted)).

[3] In its reply brief, L&B made a new argument that no Board determination could have been made in good faith because the defendants "used their four seats on [Taubman Centers'] Board to rig the outcome." Because L&B failed to raise this argument in its opening brief, it is forfeited. *See United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001) ("We will generally not hear issues raised for the first time in a reply brief." (citing *Bendix Autolite Corp. v. Midwesco Enters., Inc.*, 820 F.2d 186, 189 (6th Cir. 1987))).

Centers in jeopardy of losing its REIT status.[4] But even if that were true—a matter upon which we take no position here—it would not permit this court to ignore the plain language of the charter. *See In re Smith Trust*, 745 N.W.2d 754, 757–58 (Mich. 2008) ("In interpreting a contract, it is a court's obligation to determine the intent of the parties by examining the language of the contract according to its plain and ordinary meaning. If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." (internal citations omitted)).

L&B's claim that the Taubman Family owns stock in excess of the Ownership Limit depends upon its rejection of the 14,000:1 valuation formula contained in the Articles of Incorporation. Because L&B's breach-of-contract claim is belied by the clear terms of the very contract on which it is based, L&B has not stated a plausible claim. *See Cates v. Crystal Clear Techs., LLC*, 874 F.3d 530, 536 (6th Cir. 2017) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) (per curiam))).

---

[4] In order to qualify as a Real Estate Investment Trust under the Internal Revenue Code, Taubman Centers must comply with what is known as the "5/50 Test," pursuant to which five or fewer individuals may not own "more than 50 percent in value of [a corporation's] outstanding stock[.]" 26 U.S.C. § 542(a)(2). L&B contends that, when conducting this test, the Internal Revenue Service will include the value of the associated partnership units of TRG Partnership when calculating the value of the Series B Preferred Stock. This same value, L&B argues, must be used to calculate the "Market Price" of Series B Stock, because, if not, the Ownership Limit cannot ensure that Taubman Centers can pass the 5/50 Test. We need not decide what the "value" of the Series B Preferred Stock would be under 26 U.S.C. § 542(a)(2) nor whether Taubman Centers passes the 5/50 Test. This is a breach-of-contract action and the terms of the Articles of Incorporation are clear.

B.

As L&B's first claim falls, so too does its second. L&B claims that Taubman Centers violated Section 14(a) of the Securities Exchange Act of 1934 by making the following declarations in its proxy statement: (1) that one share of Series B Stock has a value of 1/14,000th of the value of one share of common stock, (2) that the Taubman Family's ownership of stock does not violate the Ownership Limit, and (3) that the Taubman Family is entitled to an approximately 30% voting interest in Taubman Centers. The truth of the second and third statements, as the parties seem to agree, depends on the truth of the first. The question before us, therefore, is whether L&B has stated a claim under Section 14(a) regarding the declaration in the proxy statement that one share of Series B Stock is valued at 1/14,000th the value of one share of common stock.

Section 14(a) declares it "unlawful" to solicit any proxy "in contravention of such rules and regulations as the [Securities and Exchange] Commission may prescribe as necessary or appropriate." 15 U.S.C. § 78n(a)(1). SEC Rule 14a-9 prohibits solicitations that:

> contain[] any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

17 C.F.R. § 240.14a-9(a). Therefore, to state a Section 14(a) claim, L&B must show as one element that the proxy statement contained a materially false or misleading statement or omission. L&B fails at this basic step: Taubman Centers did not make a materially false or misleading statement by recounting the value of Series B Preferred Stock used to determine voting shares and whether the Ownership Limit was reached. L&B argues that the statement is false because the Articles of Incorporation require a different valuation, based on the Articles' definition of "Market Price." But, as discussed above, the Articles assign the Series B Preferred Stock value, declaring

that the stock is "convertible . . . into Common Stock at a conversion ratio of 14,000:1[.]"

Accordingly, L&B failed to state a claim under Section 14(a) upon which relief can be granted.

\* \* \*

We AFFIRM the district court's dismissal of L&B's claims for failure to state a claim.